**BAKER & HOSTETLER LLP**
Sean P. Killeen (SBN 320644)
*skilleen@bakerlaw.com*
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2623
Facsimile: 415.659.2601

*Attorneys for Defendant*
MYFITNESSPAL, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH and CHRISTINE WILEY, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

MYFITNESSPAL, INC.,

Defendant.

CASE NO.: 5:25-CV-04430-PCP

[*Assigned to Hon. P. Casey Pitts*]

**DEFENDANT MYFITNESSPAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT, AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed Concurrently with Declaration of Sean P. Killeen; and Request for Judicial Notice]*

**Date**: September 18, 2025
**Time**: 10:00 a.m.
**Dept.**: Courtroom 8, 4th Floor

**Action Filed:** May 23, 2025

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND ITS COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on, September 18, 2025, at 10:00 a.m., in Courtroom 8 of the above-entitled Court located on the 4th Floor of the Robert F. Peckham Courthouse, at 280 South First Street, San Jose, California, 95113, Defendant MyFitnessPal, Inc. ("MFP"), will and hereby does move to dismiss with prejudice the Class Action Complaint ("Complaint") of Plaintiffs Vishal Shah and Christine Wiley ("Plaintiffs"), filed individually and on behalf of others similarly situated (Dkt. 1).

MFP respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing and fail to allege sufficient facts to plead: (1) invasion of privacy or intrusion upon seclusion; (2) a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a); (3) a violation of CIPA, California Penal Code § 638.51, (4) fraud, deceit and/or misrepresentation, (5) unjust enrichment, (6) breach of contract and breach of implied covenant of good faith and fair dealing, and (7) trespass to chattels. As Plaintiffs' claims all sound in fraud, MFP also moves to dismiss pursuant to Fed. R. Civ. P. 9(b) as each claim falls far short of alleging specific detail of the alleged fraud as required.

MFP further moves the Court for an order pursuant to Fed. R. of Civ. P. 12(f): (i) striking immaterial or impertinent allegations; and (ii) striking Plaintiffs' class definition because it is facially overbroad, and the proposed class can never satisfy Rule 23.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Sean P. Killeen, Request for Judicial Notice, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: July 11, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: *_/s/ Sean P. Killeen_*
Sean P. Killeen

*Attorney for Defendant*
MYFITNESSPAL, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

III. ISSUES TO BE DECIDED ........ 5

IV. ARGUMENT ........ 5

A. Plaintiffs Lack Article III Standing ........ 5

B. Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b). ........ 6

C. Plaintiffs' Claims Should Be Dismissed with Prejudice Under Rule 12(b)(6). ........ 7

1. Plaintiffs Do Not and Cannot Allege a Cognizable Injury for Any of Their Claims. ........ 8

2. Plaintiffs' Two Common Law Claims for Invasion of Privacy Should Be Dismissed. ........ 10

a. As Pled, Plaintiffs' Claims Are Outside the Statute of Limitations. ........ 10

b. Plaintiffs Cannot Allege Any Reasonable Expectation of Privacy. ........ 10

c. Nothing MFP Did Was "Highly Offensive." ........ 11

3. Plaintiffs' Wiretapping (CIPA Section 631(a)) Claim Should Be Dismissed. ........ 12

a. Plaintiffs Cannot Allege a Violation of the First Three Clauses of § 631(a) ........ 13

b. Plaintiffs Cannot Allege Aiding or Abetting Liability. ........ 15

4. Plaintiffs' Pen Register Claim (CIPA Section 638.51) Should Be Dismissed. ........ 15

5. The Common Law Fraud, Deceit and/or Misrepresentation Claim Should Be Dismissed. ........ 17

6. Plaintiffs' Unjust Enrichment Claim Is Barred as a Matter of Law. ........ 18

7. Plaintiffs' Trespass to Chattels Claim Should Be Dismissed. ........ 18

D. Several Allegations Should Be Stricken Under Rule 12(f). ........ 19

1. Impertinent and Immaterial Allegations Should be Stricken. ........ 20

2. Class Allegations Should Be Stricken. ....................................................20

V. CONCLUSION ........................................................................................21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)....................18

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019)....................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7, 17

*Beltran, v. Doctors Medical Center Of Modesto*,
2025 WL 1635467 (E.D. Cal., 2025)....................11

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024)....................18

*Bradley v. Google, Inc.*,
2006 WL 3798134 (N.D. Cal. Dec. 22, 2006)....................13

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008)....................20

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................12, 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....................10

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024)....................18

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....................5

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
79 Cal. App. 5th 755 (2022)....................8

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....................15

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019)....................1, 7


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........ 11, 12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 9, 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 10

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal., 2025) ........ 19

*Engalla v. Permanente Med. Grp.*,
15 Cal. 4th 951 (1997) ........ 17

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) ........ 17

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 10

*Fantasy, Inc. v. Fogarty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ........ 20

*Fladeboe v. Am. Isuzu Motors Inc.*,
58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007) ........ 18

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ........ 20

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 13

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 10, 11

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ........ 9

*Hartley v. Urb. Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. July 17, 2024) ........ 6

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ........ 11

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) ....................18

*Hooked Media Grp. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) ....................18

*Hospevian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ....................20

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................9

*Huynh v. Jabil Inc.*,
2023 WL 1802417 (N.D. Cal. Feb. 7, 2023) ....................21

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ....................18

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................11, 12, 19

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ....................13

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ....................11

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ....................13

*Joseph v. J.J. Mac Intyre Cos., LLC*,
238 F. Supp. 2d 1158 (N.D. Cal. 2002) ....................8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................8

*King v. Hard Rock Cafe Intl. (USA), Inc.*,
2025 WL 1635419 (E.D.Cal., 2025) ....................14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................13

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ....................13

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ....................6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................9

*Marich v. MGM/UA Telecomm, Inc.*,
113 Cal. App. 4th 415 (2003) ....................8

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ....................13

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ....................6

*O'Shea v. Littleton*,
414 U.S. 488 ....................20

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ....................7

*R.D. Reeder Lathing Co. v. Cypress Ins. Co.*,
3 Cal. App. 3d 995 (1970) ....................8

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ....................21

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ....................8

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ....................13

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) ....................14

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ....................18

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) ....................17

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ....................12

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ....................20

*Segen v Rickey*,
2008 WL 590505 (N.D. Cal. Feb. 29, 2008) ....................16

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ....................15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................7, 19

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) ....................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................5

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................17

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................13

*Vess Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................7

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................14

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ....................7

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....................13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................11, 14

**Statutes**

Cal. Civ. Code § 338(c) ....................19

Cal. Civ. Code § 338(d) ....................18

Cal. Civ. Proc. Code § 335.1 ....................10

Cal. Penal Code § 20....................17

Cal. Penal Code § 484(a) ....................10

Cal. Penal Code § 631....................13, 14

Cal. Penal Code § 631(a) ....................12, 13, 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Cal. Penal Code § 637.2(a) .......... 8

Cal. Penal Code § 638.50-53 .......... 16

Cal. Penal Code § 638.50(b) .......... 15

Cal. Penal Code § 638.51 .......... 16

Cal. Penal Code § 638.51(a) .......... 15

Cal. Penal Code § 638.52(d)(1)-(3) .......... 16

**Rules**

Fed. R. Civ. P. 9(b) .......... 2, 6, 7, 17

Fed. R. Civ. P. 12(b) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... 5, 7, 20

Fed. R. Civ. P. 12(f) .......... 5, 19

**Other Authorities**

MyFitnessPal, About MyFitnessPal, https://www.myfitnesspal.com/ (last accessed June 10, 2025) .......... 1, 3

Baker & Hostetler LLP
Attorneys at Law
San Francisco

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs Vishal Shah and Christine Wiley ("Plaintiffs") are serial litigants specializing in boilerplate claims resting on the remarkable proposition that benign website cookies are criminal wiretaps and pen registers, and that their use triggers a grab bag of privacy violations. Plaintiffs seek to reinvent everyday digital business tools, used by millions of websites to analyze performance and deliver useful content, into criminal instruments that create enormous civil exposure and class action windfalls.

Plaintiffs assert that MyFitnessPal Inc.'s ("MFP") website (www.myfitnesspal.com, the "Website") fires cookies, including cookies for targeted marketing and advertising, despite users' selections on the "cookie banner" either toggling off "Functional Cookies" and/or "Advertising Cookies." *See* Compl. ¶ 35-40. While the Complaint is full of inflammatory rhetoric, it lacks the barest facts regarding Plaintiffs' interactions with this free, public website. Based on the nature of the Website and Plaintiffs interactions with it, they cannot allege any injury-in-fact and cannot otherwise allege facts required to sustain their claims. Moreover, no amendment could possibly resuscitate them.

The gravamen of Plaintiffs' Complaint is that MFP told "outright lies" about the Website users' ability to "browse without being tracked." *See id.* ¶ 2. However, far from alleging the "who, what, where, and when" required for claims sounding in fraud, *see Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (Orrick, J.), Plaintiffs provide virtually no details of their own experiences with the Website, stating only that they visited the Website "to seek[] information about MyFitnessPal's products and services" and made selections to "[opt] OUT" on the pop up cookie consent banner. *See* Compl. ¶¶ 87, 89, 97, 99. In fact, Plaintiffs acknowledge that they did not even sign up for accounts with MFP. *Id.* ¶ 16. There are no facts whatsoever explaining how *Plaintiffs'* banal web surfing on MFP's Website resulted in the "egregious privacy violation[s]" claimed here. *Id.* ¶ 1. Plaintiffs provide no details explaining what device and browser they were using to access the Website; what their browser cookie/privacy settings were; what, if any, cookies allegedly were installed or fired after Plaintiffs made their toggle selections; what

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"personal information" or "private communications" of Plaintiffs actually were transmitted; and how they suffered any actual injury whatsoever as a result of their alleged browsing of a public website. Moreover, despite garnishing the Complaint with screenshots of the cookie banner pop-up and quoting MFP's Website Terms and Conditions of Use and Privacy Policy, Plaintiffs fail to explain how any specific statements in these documents are untrue *as to them*. These defects are fatal to Plaintiffs' Complaint under any federal pleading standard and certainly fail to meet the particularity requirements of Rule 9(b).

Each of Plaintiffs' claims also fails under Rule 12(b) because Plaintiffs lack standing and have utterly failed to allege they have suffered any cognizable injury, a necessary element of each of their claims. In fact, Plaintiffs do not identify what information of theirs has been collected or shared by MFP, nor have they explained how the value of their alleged "Private Information"[1] has been diminished or lost. They instead rely on speculation and bald assertions that cannot satisfy the *Twombly/Iqbal* standard.

A litany of additional reasons justify dismissing each cause of action with prejudice, including, to name a couple: (1) that Plaintiffs have no legally protectible privacy interest in the data allegedly transmitted by the third-party cookies (for privacy claims); and (2) none of the data allegedly collected is the "content" of any "communications" (for CIPA wiretap claim). Furthermore, the undated screenshots taken by an unidentified "Website user," and all related allegations in the Complaint, as well as Plaintiffs' facially overbroad class allegations, should be dismissed or stricken.

///

///

///

///

///

[1] "Private Information" is defined in the Complaint as Plaintiffs' browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data. Compl. ¶ 24.

## II. FACTUAL BACKGROUND

***MFP lawfully and transparently uses third-party cookies and provides users with the information necessary to make choices regarding certain data sharing.***

MFP is a premier nutrition and fitness tracking application ("app") that, among other things, allows its users to track calories by logging food and exercise.[2] The Website exists primarily to promote the MFP mobile app. *See* Compl. ¶ 26. Like virtually all websites, the MFP Website embeds first- and third-party code for analytics, website functionality and security, advertising, and marketing purposes. *See* Compl. ¶¶ 29, 35.

In aid of transparency and to enable easy opt out of data collection on the Website, MFP deploys a cookie management tool that features a "cookie banner" pop-up notification prominently placed on its Website. The tool—which is not required under ***any*** U.S. law— also provides visitors with a direct link to MFP's comprehensive Privacy Policy and includes certain toggles for visitors to manage their Website browsing choices.[3]

The Complaint contains a screenshot of the Website cookie banner taken at an unknown date and time, by an unidentified Website user. *See* Compl. ¶ 1.[4] As depicted, the cookie banner conspicuously discloses MFP's use of "first and third party cookies" and links to MFP's Privacy Policy. *Id*. The banner also includes a "here" link, that, when clicked, gives users the opportunity to toggle off two categories of cookies: "Functional Cookies" and "Advertising Cookies." *Id* ¶¶ 1, 30-33.[5]

---

2 MyFitnessPal, About MyFitnessPal, https://www.myfitnesspal.com/ (last accessed June 10, 2025).

3 California law does not prohibit companies from placing third-party technology on their websites or prohibit the placement of a cookie by the third-party technology. Rather, California law only provides that a company must give consumers the ability to *opt out* of the collection of data by that third-party technology if it is "sold" or used for the purpose of cross-context behavioral advertising, as defined by the California Consumer Privacy Act.

4 The cookie banner depicted in the Complaint was live between November 22, 2022 and May 30, 2024.

5 The Complaint also contains other screenshots allegedly depicting the transmission of third-party cookies after a visitor allegedly opted out of cookies on the Website. These are not screenshots of Plaintiffs' website activity, but instead purportedly demonstrate an unknown "user" using an unknown device and browser, with unknown device and browser settings, navigating the Website at an unknown time. *See generally* Compl. ¶¶ 41-42, 47-50, 58-62, 69-73.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The December 18, 2020 version of the Privacy Policy alleged in the Complaint and conspicuously linked in the cookie banner allegedly deployed at the time that Plaintiffs accessed the Website,[6] informs visitors that MFP uses cookies on its websites, describes cookies and pixels, and explains the categories of cookies in use on the Website. It also explains that "[i]f [a user] block[s] all cookies, certain functionality on [the] Website will not work." Compl. ¶ 28.

***Plaintiffs' allegations about their own experiences lack basic and necessary facts.***

Plaintiff Shah alleges he "visited the Website to seek information about MyFitnessPal's products or services, while located in California, on one or more occasions during the last four years" Compl. ¶ 86. He further alleges that the Website detected that he was a visitor in California and "immediately presented him with Defendant's popup cookie consent banner[.]" *Id.* ¶ 88. Shah does not, however, provide screenshots of the cookie banner(s) he saw during his visits to the Website. Nor does he: (i) identify the device(s) or browser(s) he used to visit the Website; (ii) state whether his cookie settings were set to automatically accept some or all cookies and/or automatically delete cookies at some discrete point in time; (iii) or even allege whether he clicked or viewed the "Privacy Policy" conspicuously linked on the Website's cookie banner. Other than allegedly clicking the cookie banner, Shah does not describe with any specificity the actions he took while visiting the Website. *Id.* ¶¶ 87-88.

Plaintiff Wiley's allegations are essentially identical to Plaintiff Shah's. Plaintiff Wiley provides no details regarding her visits to the Website, other than that they occurred sometime "on one or more occasions during the last four years," (Compl. ¶ 96); that she viewed the cookie banner and "selected and clicked the "here" link to opt out of the use and placement of cookies" (*id.* ¶ 99); and that she "continued to browse the Website in reliance on the promises Defendant made in the cookie consent banner and Your Choices window" (*id.* ¶ 103). As with Plaintiff Shah, Plaintiff Wiley fails to provide any information regarding her device and browser settings, browsing sessions, cookies, and/or alleged injuries. She also alleges no actual injury as a result of her Website browsing.

---

6 Plaintiffs allege "based on information and belief" that the December 18, 2020 version of the Privacy Policy was the "version in effect at the time of Plaintiffs' choice to "opt out" of cookies on the Website." Compl. ¶ 28 n.1.

Plaintiffs fail to allege what cookies allegedly fired after they made privacy selections on the Website, or what information was purportedly collected by which cookie. Importantly, neither Plaintiff describes what pages they viewed or how long they spent browsing. They likewise do not allege they entered any content such as name, email, or ***any*** other information into any field. They also do not allege they used a search bar or sent any messages or communications through the Website.

At bottom, Plaintiffs do not allege that they have suffered *any* harm whatsoever from any cookie or any alleged misrepresentation. The nearest they can muster is to say that they "would not have used the Website" if they had known that MFP's "representations that consumers could "opt out of," decline, or reject all cookies, . . . other than those required for the operation of the Website" were untrue or "at a minimum, [they] would have interacted with the Website differently." *Id.* ¶¶ 94, 104. This is no injury.

## III. ISSUES TO BE DECIDED

1. Have Plaintiffs satisfied the requires for Rule 12(b)(1) standing?
2. Have Plaintiffs satisfied the Rule 9(b) standard for each of their claims?
3. Have Plaintiffs satisfied the Rule 12(b)(6) standard for each of their claims?
4. Should Plaintiffs' allegations relating to the putative class and unvisited websites be dismissed or stricken under Rule 12(b)(6) or Rule 12(f)?

## IV. ARGUMENT

### A. Plaintiffs Lack Article III Standing.

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). The Supreme Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* ("an injury in law is not an injury in fact"). Accordingly, to establish Article III standing, Plaintiffs must "identify the specific personal information" that "implicates a protectable privacy interest" that was then intercepted by or improperly disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, Jr., J) (finding lack

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact.").

No such concrete injury exists here. Plaintiffs fail to allege that they were harmed in any way by their Website browsing. None of the generic allegations in the Complaint – all of which are untethered to Plaintiffs' own experiences – are sufficient to save their Complaint from dismissal. For example, Plaintiffs' general allegations about how the Facebook, Google, TikTok and "additional third-party" cookies allegedly operate and ***may be capable of collecting*** do not sufficiently establish what information these cookies ***actually collected*** from the named Plaintiffs (if anything) during their visits to the Website. *See e.g., Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."). Aside from these vague allegations, Plaintiffs do not—and cannot—claim that any of their specific information was collected or that they were injured by such alleged collection.

Simply put, because Plaintiffs have not alleged a concrete harm to their privacy, they have failed to satisfy the injury in fact requirement for Article III standing. Furthermore, without standing, this Court must dismiss Plaintiffs' § 638.51 claims for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction").

### B. <u>Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b).</u>

Each of Plaintiffs' claims is subject to and fails to meet the Rule 9(b) heightened pleading standard for claims that "sound in fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (the word "fraud" need not be used). As set out in the opening allegations of Plaintiffs' Complaint, Plaintiffs' claims all arise from the alleged "outright lies" of MFP: allegedly telling Website users that they could entirely avoid data sharing while browsing the Websites and purposefully not "honor[ing] users' requests to opt out of, decline, or otherwise

reject all non-required cookies and tracking technologies." Compl. ¶¶ 95, 105, 117, 155. Where, as here, plaintiffs "allege a unified course of fraudulent conduct and rely entirely on that course of conduct," the pleaded claims "sound in fraud" and are each subject to the heightened pleading requirements of Rule 9(b). *Vess Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200–01 (N.D. Cal. 2019) (Seeborg, C.J.) (applying Rule 9(b) to misrepresentation-based claims including intrusion upon seclusion and invasion of privacy claims).

Plaintiffs fall far short of "stat[ing] with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged," as is required. *Colgate*, 402 F. Supp. 3d at 744. As discussed above, there are virtually no *factual* allegations regarding *Plaintiffs'* experiences; the Complaint instead relies on a smattering of undated screenshots of Website visits obtained from an unidentified "Website user." *See, e.g.*, Compl. ¶¶ 41, 47-49, 58, 60, 69, 71. But this is legally insufficient to satisfy Plaintiffs' burden under Rule 9(b) (or 12(b)(6)) to allege how MFP defrauded *them*. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (Rogers, J.) (dismissing fraud-based claims where plaintiff "fail[ed] to provide the particulars of *her own experience"* reviewing or relying on misrepresentations) (emphasis added).

### C. <u>Plaintiffs' Claims Should Be Dismissed with Prejudice Under Rule 12(b)(6).</u>

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

**1. Plaintiffs Do Not and Cannot Allege a Cognizable Injury for Any of Their Claims.**

Each of Plaintiffs' claims requires Plaintiffs to allege they have suffered a cognizable injury. *See Marich v. MGM/UA Telecomm, Inc.*, 113 Cal. App. 4th 415, 423 (2003) (an essential element of a claim for invasion of privacy is that "[t]he intrusion caused plaintiff to sustain injury, damage, loss or harm"); *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) (Chen, M.J.) (same for intrusion upon seclusion claim); Cal. Penal Code § 637.2(a) (CIPA statutory standing requires plaintiff has been "injured by" a violation of CIPA); *R.D. Reeder Lathing Co. v. Cypress Ins. Co.*, 3 Cal. App. 3d 995, 999 (1970) (fraud plaintiff must show "he has sustained some pecuniary damage or injury" as a result of the fraud); *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 762 (2022) ("[I]njury to the plaintiff's personal property or legal interest therein...*is* an element of the action" for trespass to chattels."). And while Plaintiffs summarily aver they have suffered a litany of injuries (*see e.g.*, Compl. ¶¶ 119, 120, 153, 172, 193), they allege no *facts* to support these claimed harms as is required to survive a motion to dismiss.

***Invasion of Privacy*:** As discussed below, Plaintiffs have no expectation of privacy in any of the information allegedly collected by MFP. *See infra*, Section 2(b). Notably, Plaintiffs do not identify any information of *theirs* that was actually collected by any Website cookie. Even if any of their information was collected, courts consistently have held that the mere collection of browsing history, page views and IP addresses, absent a tangible or concrete harm, does not constitute a sufficient injury to support legal claim. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036, 1040 (N.D. Cal. 2019) (Alsup, J.); *Rodriguez v. Autotrader.com, Inc.*, 762 F.Supp.3d 921, 926-27 (C.D. Cal. 2025) ("Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful."). Plaintiffs allege *nothing* about any "rejected" cookies on their browsers, let alone any tangible harms suffered as a result of any collection/transmission from "rejected" cookies.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

***Loss of value and control of information:*** While Plaintiffs summarily state they have suffered a diminution of value in their information, *see* Compl. ¶ 172, courts have repeatedly held that plaintiffs must allege *how* they have suffered economic harm. *See e.g.*, *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (Van Keulen, M.J.) (granting motion to dismiss and finding no injury alleged where plaintiffs did not allege facts explaining *how* defendant's collection and use of plaintiffs' information reduced the value of that information). Plaintiffs must plead what economic value the allegedly transmitted information held *to them* and how that value was diminished through MFP's alleged misconduct. *See e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (Koh, J.) ("[T]he Amended Complaint fails to allege how either Plaintiff was foreclosed from capitalizing on the value of his personal data."). It is irrelevant that Plaintiffs allege generally that "[t]he value of Private Communications tracked and collected by the Third Parties using cookies on the Website *can be quantified*" (Compl. ¶ 83) or that certain user information helps MFP "monetize its Website and application and maximize revenue" (*id.* ¶ 82), as the named Plaintiffs have not alleged any desire or plan to monetize this data themselves. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (Tigar, J.) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property."). Indeed, the Complaint indicates that Plaintiffs have no interest in selling their data, as that would reveal information they claim is too ***private*** to share with third parties.

***Reduction of storage and value of computing devices:*** Plaintiffs do not identify their devices or describe any loss of storage or value to them. Nor could Plaintiffs allege any concrete injury of this sort, as third-party cookies are temporary, usually delete automatically and can manually be deleted by Plaintiffs at any time. Indeed, "nothing about the...existence of cookies physically impairs the functioning of Plaintiffs' or other users' computing devices in any way." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (Chhabria, J.) (granting motion to dismiss). Furthermore, Plaintiffs' claim that they no longer are willing to visit MFP's Website (Compl. ¶¶ 95, 105) is no injury at all. Plaintiffs have no legal right to visit MFP's website, and "the decision not to use one's computer to communicate with a specific entity is not the same as



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

actually being deprived of the ability to use one's computer." *Doe I*, 741 F. Supp. 3d at 846; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1088 (N.D. Cal. 2023) (Orrick, J.) (finding allegations that plaintiffs no longer wanted to use their devices to communicate with their healthcare providers insufficient to support trespass to chattels claim).

**2. Plaintiffs' Two Common Law Claims for Invasion of Privacy Should Be Dismissed.**

When claims for invasion of privacy and intrusion upon seclusion are brought together on the same factual basis, courts conduct a combined inquiry because of the similarities in their analyses. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (Breyer, J.). To determine whether plaintiffs have sufficiently alleged these claims, courts consider whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs fail to allege either element and cannot do so given the contents and limited functionality of the Website.[7]

**a. As Pled, Plaintiffs' Claims Are Outside the Statute of Limitations.**

Both invasion of privacy claims have a two-year statute of limitations. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (Koh, J.) (statutes of limitations for "intrusion upon seclusion and invasion of privacy claims is two years.") (citing Cal. Civ. Proc. Code § 335.1). Plaintiffs Shah and Wiley have merely alleged to have visited the Website "during the last four years" (Compl. ¶¶ 86, 96) and thus have not alleged facts sufficient to place themselves within the applicable statute of limitations period.

**b. Plaintiffs Cannot Allege Any Reasonable Expectation of Privacy.**

Courts have routinely held that public website visitors have no reasonable expectation of privacy in the very type of information purportedly at issue in this Complaint, "including browsing

[7] Plaintiffs in their first cause of action also allege Penal Code section 484(a), California's petty theft law, creates a "legally protected privacy interest" that was violated. But that statute concerns theft or dispossession of property—not any invasion of privacy.

history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data[.]" Comp. ¶ 3; *see, e.g., In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (finding no reasonable expectation of privacy in the URL of a website the plaintiff previously had visited or in basic identification information); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (Davila, J.) (no reasonable expectation of privacy in their geolocation data); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (no invasion of privacy for collection of user's account name, IP address, geographic location, and referral site URL).

Repeatedly referring to hypothetically collected information as "Private Communications" does not make it so. In any event, Plaintiffs fail to explain how visiting a public website would be private, or how any allegedly collected information constitutes a "communication" between Plaintiffs and MFP. *See Jones v. Peloton Interactive, Inc.* 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (granting motion to dismiss because there is no legally protected privacy interest in the contents of internet-connected chats with defendant where plaintiff did not allege she shared any sensitive and confidential information and instead vaguely alleged a chat *could* include private or sensitive information); *Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) (Donato, J.) (dismissing privacy claim where plaintiff only made bareboned and vague allegation that Facebook collected his "private" location data).

**c. Nothing MFP Did Was "Highly Offensive."**

As other courts in this district have recognized, "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (Koh, J.) (dismissing privacy claim with prejudice because sharing data including "unique device identifier number, personal data, and geolocation information from Plaintiffs' Devices" was routine commercial behavior and not highly offensive); *see also Beltran, v. Doctors Medical Center Of Modesto*, 2025 WL 1635467, at *8 (E.D. Cal., 2025). Plaintiffs cannot save their privacy claims by cloaking them in alleged fraud or false



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

statements. *See supra*, Section IV(B); *see Hammerling,* 615 F. Supp. 3d at 1090 (finding plaintiffs failed to plead "highly offensive" invasion of privacy because Google's representation regarding data collection was at most ambiguous, and plaintiffs did not allege how Google could collect or collected private information). Moreover, collection and disclosure of typical public website transmission data is no "egregious breach of social norms" ***"[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent*** . . . ." *In re iPhone*, 844 F. Supp. 2d at 1063 (emph. added).

The same result as in *In re iPhone*—dismissal with prejudice—is warranted here. In fact, courts have dismissed invasion of privacy claims (under both California's Constitution and common law) when far more sensitive data allegedly was collected and disclosed. *See, e.g., Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (Conti, J.), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (alleged disclosure of Social Security Numbers "do[es] not constitute an egregious breach" of social norms).

**3. Plaintiffs' Wiretapping (CIPA Section 631(a)) Claim Should Be Dismissed.**

"Under the CIPA, the applicable statute of limitation is one year." *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (Koh, J.). Plaintiffs filed this lawsuit on May 23, 2025, and merely allege to have visited the Website "during the last four years," (Compl. ¶¶ 86, 96) and, thus, are out of time to bring the CIPA claim.

CIPA Section 631(a) prohibits a defendant from itself engaging in, or aiding another to engage in, one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *D'Angelo,* 726 F. Supp. 3d at 1196 (citing *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)); *see* Cal. Penal Code § 631(a). Although not entirely clear from the Complaint, Plaintiffs appear to assert claims under all three clauses of § 631(a).

Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done

Baker & Hostetler LLP
Attorneys at Law
San Francisco

any of the other three bases for liability." Cal. Penal Code § 631(a). To establish a violation of § 631(a)'s aiding and abetting clause, a plaintiff must plausibly allege a violation of one of the first three clauses. *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1113–14 (S.D. Cal. 2024); *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) (stating that an aiding-and-abetting defendant's "liability…is…based entirely on whether [a third party] violated Section 631(a) in some way"). Because CIPA is a penal statute, Plaintiffs also must allege scienter. *See infra*, Section IV(B)(4).

**a. Plaintiffs Cannot Allege a Violation of the First Three Clauses of § 631(a)**

***Clause 1:*** Plaintiffs cannot state a claim under the first clause of § 631(a) because it does not apply to online conduct. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 755 (N.D. Cal. 2023) (Corley, J.) (first clause of "Section 631(a)'s plain text does not prohibit the non-telephonic conduct"); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (describing the "limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause"). While Plaintiffs cite cases in their Complaint purportedly applying Section 631(a) to "new technologies," (*see* Compl. ¶ 143), these cases only apply to the *second* clause of § 631(a), not the first. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (Koh, J.) ("[T]he second clause of section 631, *as opposed to the first clause*, is not limited to communications passing over 'telegraph or telephone' wires, lines, or cables) (emph. added); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5–6 (N.D. Cal. Dec. 22, 2006) (Alsup, J.) (quoting the second clause); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (same).

***Clause 2:*** The second clause of Section 631(a) is violated only where a third party "reads, or attempts to read, or to learn the ***contents or meaning of any message***, report, or communication ***while the same is in transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558 at *4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

use"). Put simply, the alleged third-party eavesdropper must read or learn the content of communication while it is en route to the intended recipient. The Court should reject Plaintiffs' single, conclusory boilerplate allegation that merely restates the text of the statute, (Compl. ¶ 151), which does not satisfy the plausibility standard. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. 2022) (Seeborg, C.J.) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.").

Plaintiffs' "clause 2" claim also fails because they have not identified anything that would constitute the "contents or meaning" of any intercepted communication. *Brodsky*, 445 F. Supp. 3d at 127 (Section 631 prohibits only the "unauthorized access of the contents of any communication"). Under CIPA, the "contents" of a communication are limited to "the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106. Plaintiffs repeatedly aver that the allegedly transmitted information (again not connected to Plaintiffs' experiences) are "Private Communications" and therefore "content" of "electronic communications." (*See* Compl. ¶ 149). But this is artful pleading meant to disguise the fact that the alleged Website interactions at issue are neither private nor communications at all. Courts have routinely rejected such bald assertions and instead have held that the types of data Plaintiffs identify (browsing history, page views, etc.) are unprotected "record information," not content. *See Brodsky*, 445 F. Supp. 3d at 127 (text messages are content, but "usernames, passwords, and geographic location information are not"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "content" under 631(a)); *see also King v. Hard*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Rock Cafe Intl. (USA), Inc.*, 2025 WL 1635419, at *4 (E.D.Cal., 2025) (granting defendant's motion to dismiss where, like here, "[p]laintiff's [complaint] falls short of alleging that the 'contents' of communications, as opposed to 'record information' were intercepted.").

***Clause 3:*** Finally, because Plaintiffs "failed to allege…violation of the first or second clauses, [they have] also failed to plead a violation of the third clause." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (Martínez-Olguín, J.). As these defects cannot be cured on amendment, dismissal with prejudice is appropriate.

**b. Plaintiffs Cannot Allege Aiding or Abetting Liability.**

Even if Plaintiffs plausibly could plead a violation of Clauses 2 and 3 (which they cannot), they could only maintain an aiding and abetting claim under CIPA if they ***also*** plausibly alleged that MFP caused Plaintiffs' browsers to store the Third Parties' cookies and to transmit information with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (Lin, J.). Plaintiffs do not and cannot plausibly allege that MFP knew that the ubiquitous cookie technology at issue, which was designed and offered for commercial use by reputable companies like Meta, inherently violates CIPA, and that MFP placed these technologies on their site *for the purpose of* aiding or employing these third parties to violate CIPA, as opposed to the legitimate, commercial business purposes for which these technologies are so clearly intended. To the contrary, Plaintiffs acknowledge the legitimate purpose of deploying these cookies—for analytics and advertising purposes—which precludes them from establishing the requisite intent. *See, e.g.*, Compl. ¶¶ 34, 38.

**4. Plaintiffs' Pen Register Claim (CIPA Section 638.51) Should Be Dismissed.**

CIPA also precludes "a person…[from] install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information, . . . but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs'

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

claim that third-party cookies and the corresponding software code are pen register devices fails for multiple reasons.

First, like the wiretap claim, the pen register claim is time barred under the one-year statute of limitations. *See supra*, Section 3; Compl. ¶¶ 86, 96.

Second, the express language of Section 638.51 and related sections of A.B. 929 demonstrates that they apply to devices used to conduct telephonic surveillance by capturing outgoing telephone calls—not online cookie tracking technology. *See* RJN, Declaration of Sean P. Killeen ("Killeen Decl."), Ex. A, Stats. 2015, Ch. 204, Sec. 2 ("A.B. 929") ("An Act to add Sections 638.50, 638.51, 638.52, and 638.53"). Among other requirements, a court order authorizing the installation of a pen register must specify the identity of the person "in whose name...the ***telephone line"*** is to be attached, and the exact number and physical location of the "***telephone line***" to which the device would be attached. *See* Cal. Penal Code § 638.52(d)(1)-(3).

A.B. 929's legislative history further confirms that the California Legislature did not intend the statutes to extend to websites collecting IP addresses or user-agent information. The Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained... is limited to the information that can be determined from the ***telephone number***." RJN, Killeen Decl., Ex. A (emphasis added); *see also* Ex. B, at 11 (pen registers "generally track ***incoming and outgoing telephone calls.***") (emphasis added). The bill does not otherwise mention IP addresses or other data. And, given that A.B. 929 was enacted in 2015, when the Internet and website tracking software were both known and widespread, Plaintiffs cannot plausibly argue that the Legislature was unaware of IP addresses or other Internet communications when it passed the law.

Third, Plaintiffs plead themselves out of a pen register claim by alleging that only "***some*** of the information collected" by third-party cookies on the Website "does not constitute the content" of their communications with the Websites. *See* Compl. ¶ 162 (emphasis added). The pen register statute requires that the information recorded or decoded is "***not the contents*** of a communication." *See* Cal. Penal Code § 638.50-53 (emphasis added). As Plaintiffs claim some information collected by cookies ***is*** "content" of their communications, their pen register claim

fails as a matter of law. *See Segen v Rickey*, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008) (Jenkins, J.) ("While pleading in the alternative is allowed, Plaintiff cannot plead contradictory facts.").

Finally, as with Plaintiffs' wiretap claims, Plaintiffs must establish scienter. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."); *see also* Cal. Penal Code § 20 (scienter); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 402 (S.D. Cal. 2018) (scienter is presumed in criminal statutes). Plaintiffs must allege, therefore, that MFP installed the third-party cookies and corresponding source code ***with knowledge and intent*** that the cookies would misfire and/or ***illegally*** collect information about Plaintiffs. *See Heiting*, 709 F. Supp.3d at 1019. Plaintiffs have not and cannot allege that MFP had any intent to engage in or further any third party's criminal activity, thus dooming their CIPA claim.

**5. The Common Law Fraud, Deceit and/or Misrepresentation Claim Should Be Dismissed.**

The elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.,* to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) (citing *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 974 (1997)). As discussed above, Plaintiffs have failed to plead any facts about their own experience, knowledge by MFP of any errant or unintended collection of data and/or portions of the incorporated Privacy Policy and cookie banner supporting any claimed misrepresentation or fraud by MFP. *See supra*, Section II; *see also U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (a district court may consider certain materials, such as documents incorporated by reference in the complaint, without converting the motion to dismiss into a motion for summary judgment). Nor have Plaintiffs alleged actual reliance, knowledge by MFP, or damage with specificity. Plaintiffs' bald allegations and "formulaic recitation of the elements" of fraud (Compl. ¶¶ 175-76) lack factual support and cannot satisfy the *Twombly/Iqbal*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

standard, let alone the heightened pleading standard under Rule 9(b). *See Twombly*, 550 U.S. at 555. Moreover, each claim fails because Plaintiffs do not allege actual damages. *See Fladeboe v. Am. Isuzu Motors* Inc., 58 Cal. Rptr. 3d 225, 243 (Cal. Ct. App. 2007) ("[A] defrauded party is ordinarily limited to recovering out-of-pocket damages.") (citation omitted).

Finally, both Plaintiffs once again failed to plead facts to place them within the applicable statute of limitations for this claim (three years). *See* Cal. Civ. Code § 338(d); Compl. ¶¶ 86, 96. Accordingly, Plaintiffs' fraud claim should be dismissed.

**6. Plaintiffs' Unjust Enrichment Claim Is Barred as a Matter of Law.**

Plaintiffs' unjust enrichment claim must be dismissed with prejudice, because "in California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotations omitted); *Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020) ("California does not recognize a cause of action for unjust enrichment"). Furthermore, there can be no claim for restitution "when a plaintiff fails to sufficiently plead an actionable misrepresentation or omission," *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (Corley, M.J.) (cleaned up), which Plaintiffs cannot allege here. *See supra,* Section IV(C)(5). "[W]ithout the[se] other claims, plaintiffs' claim for unjust enrichment fails." *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (Whyte, J.).

**7. Plaintiffs' Trespass to Chattels Claim Should Be Dismissed.**

Under California law, a trespass to chattels claim exists only "where an intentional interference with the possession of personal property causes injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003)). "[I]n order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *7 (N.D. Cal. Feb. 20, 2024) (Tigar, J.) (cit. omitted). A claim for trespass to chattels "does not encompass, and should not be extended to encompass, an electronic communication that neither



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

damages the recipient computer system nor impairs its functioning." *Hamidi*, 30 Cal. 4th at 1347, 1353; *see also In re iPhone*, 844 F. Supp. 2d at 1069 (the sort of harm required for a trespass claim is a "significant reduction in service constituting an interference with the intended functioning of the system."). Moreover, the claim has a three-year statute of limitations, Cal. Civ. Code § 338 (c), and Plaintiffs have not sufficiently pleaded themselves within it. *See* Compl. ¶¶ 86, 96.

Plaintiffs' trespass to chattels claim alleges that MFP "intentionally caused third party software code to be stored" on Plaintiffs' devices, which "interfered" with Plaintiffs' ability to use their devices. Compl. ¶ 192. Such conclusory allegations of "intent," however, are belied by the allegation that cookies were placed on Plaintiffs' browsers automatically. *Id.* ¶ 40 ("Defendant failed to prevent cookies from being transmitted…"). Plaintiffs do not otherwise allege what their browser settings were, what cookies attached to *their devices* (something they should know if it truly interfered) and thus cannot sustain a claim that MFP placed cookies on their device intentionally without authorization. Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell,* 266 F.3d at 988.

Furthermore, as set forth in Section IV(C)(1), Plaintiffs fail to allege *any* actual damage or impaired function of their unidentified devices. As Plaintiffs do not, and cannot, plead sufficient facts to show intentional interference with their computing devices' functioning, Plaintiffs' trespass to chattels claim should be dismissed. *See e.g.*, *Doe v. Tenet Healthcare Corporation*, 2025 WL 1635956, at *25 (E.D. Cal., 2025) (dismissing trespass to chattels claim under similar circumstances where plaintiffs failed to sufficiently allege that "any actual injury was caused by defendants," "that they were 'dispossessed' of their computing devices[,]" or that "their devices were rendered useless for exchanging private communications with [the defendant].").

**D. <u>Several Allegations Should Be Stricken Under Rule 12(f).</u>**

Certain allegations in the Complaint also should be stricken under Rule 12(f), which authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**1. Impertinent and Immaterial Allegations Should be Stricken.**

A Rule 12(f) order properly avoids the expenditure of time and money litigating spurious issues by striking allegations that are, *inter alia*, "impertinent" or "immaterial." *Fantasy, Inc. v. Fogarty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Matter is immaterial if it has no essential or important relationship to the claim for relief pleaded, and impertinent if it does not pertain and is not necessary to the issues in question in the case. *Id*.

All screenshots incorporated in the Complaint and references to the screenshots should be stricken as immaterial and impertinent, or, alternatively, all claims related to them should be dismissed under Rule 12(b)(6). *See* Compl. ¶¶ 47-49, 58-60, 69-71. These screenshots and references are undated and therefore not within any applicable statute of limitations. They were not taken by either Plaintiff (instead, the Complaint makes clear that an unidentified "Website user" took them), and there are no allegations these images are of either Plaintiffs' device, web browser, Website pages visited, cookies allegedly placed, or information allegedly shared. In short, these screenshots have nothing to do with *Plaintiffs' own alleged experiences* and therefore should be stricken as immaterial and impertinent. *See O'Shea v. Littleton*, 414 U.S. 488, 494 ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

**2. Class Allegations Should Be Stricken.**

The Supreme Court has acknowledged that the viability of a proposed class may be determined at the pleading stage. *See, e.g.*, *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 998 (N.D. Cal. 2009) (Fogel, J.) (granting motion to strike class allegations); *Hospevian v. Apple, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (same); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, (N.D. Cal. 2008) (Whyte, J.) (same). Where, as here, a complaint demonstrates on its face that a class action cannot be maintained, courts have granted motions to strike class allegations "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sanders*, 672 F. Supp. 2d. at 990–91. While some courts have noted that granting a

motion to strike class allegations "is only appropriate where the defendant presents an argument that completely precludes certification of any class, not just the class currently defined in the complaint," *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *15 (N.D. Cal. Mar. 16, 2020) (Orrick, J.); *see Huynh v. Jabil Inc*., 2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023) (same), the class allegations in the Complaint here are precisely the type that demand immediate scrutiny at the pleading stage.

Plaintiffs' purported class is defined as "[a]ll persons who, while in the State of California, browsed the Website after clicking the "here" link in the popup cookies consent banner and adjusting all available settings in the "Your Choices" window to opt out of, decline, or reject all non-required cookies, including Functional and Advertising cookies." Compl. ¶ 106. Such a class is patently overbroad and necessarily riddled with individual inquiry and self-identification. First, perhaps in an effort to avoid a fail-safe class definition, it has no requirement that after a class member declined cookies, the cookies continued to fire and collect and transmit private information to Third Parties. But even this single inquiry shows the insurmountable hurdles of establishing a class that could possibly survive requirements of commonality and predominance—any visitor's individual location (e.g., California) cannot be determined by objective means, website cookies are transient, individual browsers, device settings and cache-clearing practices vary, individual user experiences following any cookie selection will widely vary resulting in an infinite combination of website/browsing/and cookie action, to name a few. Put simply, the proposed class could never be proven in any way other than self-serving say-so and individual device examination.[8]

## V. CONCLUSION

For the foregoing reasons, MFP respectfully requests that Plaintiffs' Complaint be dismissed in its entirety with prejudice or, in the alternative, that certain allegations be dismissed and/or stricken.

[8] Cookie banners, including the one employed by MFP, typically function by deploying a cookie to the user's browser associated with the user's selection choice that is recognized in subsequent visits to the same website, by the same device on the same browser. This cookie can be cleared like any other cookie if a user clears its browser's cache.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dated: July 11, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: _/s/ Sean P. Killeen_
Sean P. Killeen

*Attorneys for Defendant*
MYFITNESSPAL, INC.