**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH and CHRISTINE WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYFITNESSPAL, INC.,<br><br>Defendant. | Case No. 5:25-cv-04430-PCP<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT MYFITNESSPAL, INC.'S MOTION TO DISMISS<br><br>Date: September 18, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts<br>Courtroom: San Jose, Courtroom 8 |

TABLE OF CONTENTS


I. INTRODUCTION ........ 1
II. STATEMENT OF FACTS ........ 2
III. LEGAL STANDARD ........ 3
IV. ARGUMENT ........ 3
A. Plaintiffs Plead a Concrete Injury-in-fact. ........ 3
B. Plaintiffs Adequately Plead Fraud, Deceit, and Misrepresentation. ........ 9
C. Defendant's Scattershot 12(b)(6) Arguments Fail. ........ 10
a. Plaintiffs adequately plead their common law privacy claims. ........ 10
(1) Plaintiffs allege a reasonable expectation of privacy. ........ 11
(2) Plaintiffs allege that MyFitnessPal's invasion of privacy was highly offensive. ........ 13
(3) Plaintiffs' Claims Are Not Barred by the Statute of Limitations. ........ 14
b. Plaintiffs Have Adequately Pled CIPA Claims. ........ 15
c. Plaintiffs Properly Allege a Violation of CIPA Section 631(a). ........ 16
(1) The information is intercepted while in transit. ........ 17
(2) Plaintiffs allege "contents" were intercepted. ........ 17
(3) Plaintiffs allege "aiding" under CIPA. ........ 18
d. CIPA section 638.51 is not limited to telephones. ........ 21
D. Plaintiffs Unjust Enrichment Claim May Proceed. ........ 22
E. Plaintiffs Sufficiently Plead Trespass to Chattels. ........ 23
V. THE COURT MUST REJECT THE MOTION TO STRIKE ........ 25
VI. CONCLUSION ........ 25

TABLE OF AUTHORITIES

**CASES**

*A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 3

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .... 25

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) .... 8

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. Dec. 20, 2023) .... 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .... 3

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .... 19

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .... passim

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) .... 23

*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) .... 4

*Calhoun v. Google LLC*, 526 F.Supp.3d 605 (N.D. Cal. 2021) .... 12, 13

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .... 5, 6

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) .... 4

*Cody v. Ring LLC*, Case No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024) .... 16

*Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) .... 19

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .... 23

*Edwards v. First American Corp.*, 798 F.3d 1172 (9th Cir. 2015) .... 5

*Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) .... 23

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) .... 15

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836
(N.D. Cal. July 14, 2025) ........ passim

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*,
750 F.3d 1098 (9th Cir. 2014) ........ 5

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 21, 22

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592
(N.D. Cal. 2021) ........ 12, 14

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. July 17, 2024) ........ 6

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781
(C.D. Cal. 2024) ........ 18

*Heiting v. Taro Pharms. USA, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) ........ 22

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994) ........ 13

Hubbard v. Google LLC,
LEXIS 117876, U.S. Dist. 2024 ........ 8

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 18

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767
(N.D. Cal. 2019) ........ 23

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ........ 1, 6

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147
(N.D. Cal. 2021) ........ 8, 12, 14

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) ........ 14, 23

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650
(N.D. Cal. 2024) ........ 9, 24

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204
(C.D. Cal. 2017) ........ 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 17

*Intel Corp. v. Hamidi*,
30 Cal.4th 1342 (2003). .......... 23

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022).......... 16

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......... 6

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928
(N.D. Cal. 2023).......... 7, 14

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565
(C.D. Cal. Sep. 3, 2024).......... 19

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 6

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378
(N.D. Cal. Dec. 12, 2024) .......... 21, 22

*Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS
186955 (N.D. Cal. Oct. 23, 2019).......... 13, 19

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104
(S.D. Cal. 2024) .......... 16

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685
(S.D. Cal. Dec. 3, 2024).......... 16

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476
(N.D. Cal. Jan. 25, 2022) .......... 17

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290
(N.D. Cal. Jan. 3, 2024) .......... 8

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2025 U.S. Dist. LEXIS 3238
(N.D. Cal. Jan. 7, 2025) .......... 11, 12

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074
(N.D. Cal. May 21, 2021) .......... 13

*Sanders v. Am. Broad. Cos.*,
20 Cal. 4th 907 (1999) .......... 12

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677
(N.D. Cal. Mar. 3, 2025).......... 23

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032
(N.D. Cal. Oct. 21, 2024).......... 21, 22

*Shahnaz Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519
(S.D. Cal. Feb. 12, 2025) .......... 19

*Silver v. Stripe, Inc.*,
No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28,

2021) .......... 14

*Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) .......... 20

*Spokeo Inc. v. Robins*, 578 U.S. 330 (2016) .......... 4

*St. Aubin v. Carbon Health Techs., Inc., No. 22-cv-2012 DMS (MSB), 2024 U.S. Dist. LEXIS 179067 (S.D. Cal. May 8, 2024).* .......... 18

*Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) .......... 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 4

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) .......... 19

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 17

*Van Saher v. Norton Simon Mus. of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) .......... 15

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 13

*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 17

**STATUTES**

Cal. Penal Code § 631(a) .......... 15, 16, 22

Cal. Penal Code § 638.50(b) .......... 21

Cal. Penal Code § 638.51 .......... 16, 21

Cal. Penal Code § 638.51(a) .......... 21

Cal. Penal Code § 638.51(b) .......... 21

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 3, 11, 15

## I. INTRODUCTION

Plaintiffs Vishal Shah and Christine Wiley (collectively, "Plaintiffs") bring suit against MyFitnessPal Inc. ("Defendant" or "MFP") for aiding third parties in the collection of Plaintiffs' private information against their express instructions, and in violation of Defendant's express promise to protect that information. In particular, Defendant surreptitiously placed third-party tracking cookies on Plaintiffs' devices *after* they explicitly rejected and opted out of such cookies by clicking the available cookie settings in the cookie consent banner, *see infra*. As a result, Defendant caused the third parties to collect vast swaths of Plaintiffs' data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" ***despite explicitly promising not to do so***. ECF 1 ¶ 3. This deceptive practice is a highly offensive violation of Plaintiffs' privacy rights and more than sufficient to plead their claims for relief. *See Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) (denying motion to dismiss complaint alleging defendant's website violated privacy laws by using tracking cookies after expressly promising it would not do so).

Defendant primarily attempts to avoid liability by incorrectly arguing that Plaintiffs lack standing to sue because they do not allege an "injury in fact." But invasion of privacy and intrusion upon seclusion are traditionally recognized harms. Accordingly, "a concrete injury for Article III standing purposes occurs when [any third party] *tracks* a person's internet browser activity without authorization." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019). "Statutes such as CIPA thus 'codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'" *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *15 (quoting *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)).

The remainder of Defendant's arguments are also easily dispensed with. The Complaint adequately alleges that Defendant owns and operates the Website, installed third-party resources that shared private user data with those third parties, promised to turn those resources off, and

then did not do so. ECF 1 ¶¶ 20–27, 35–45. Those are all intentional acts. Defendant's argument that its conduct was not "highly offensive" is based on the same outdated law as its standing arguments, and fails for the same reason. Finally, MFP fails to grapple with the fact that the Complaint alleges interception of both contents and record information.

This Court should deny Defendant's motion in its entirety.

## II. STATEMENT OF FACTS

When consumers visit Defendant's website (www.myfitnesspal.com, the "Website"), Defendant displays to them a popup cookie consent banner in which it offers Website users the option to control how they are tracked and how their personal data is used. The following screenshot is the popup cookie consent banner displayed to users of the Website:




ECF 1 ¶ 1. The cookie consent banner stated, "We use first and third party cookies to make our site work (Required Cookies), for analytics (Functional Cookies), and to personalize content and ads (Advertising Cookies). You may opt out of the use of certain cookies <u>here</u>[.]" The word "<u>here</u>" was a hyperlink which users could click to open the "Your Choices Regarding Cookies on this Site" window. *Id.* ¶¶ 35–36. Defendant's Your Choices window states that users can "choose whether this site may use Functional and/or Advertising cookies" and "featured toggle switches that users could adjust to opt out of, decline, or otherwise reject such cookies[.]" *Id.* ¶ 36. Defendant was clear on the types of cookies which could be rejected for Functional and Advertising cookies because it specifically listed each cookie which users could decline or opt out of under each category. *See id.* ¶¶ 32–33 (identifying, among others, Facebook, Google, and Amazon as third party Functional and Advertising cookies).

Despite its specific and repeated representations that it would not use cookies or share user information with third parties if users of the Website clicked the "<u>here</u>" link on the Website's popup cookie consent banner and adjusted all available settings in the Your Choices window to opt out of, decline, or reject all categories of non-required cookies, including Functional and

Advertising cookies, Defendant nonetheless caused the installation of cookies from the very third parties Defendant represented Website users could opt out of—including Google LLC (DoubleClick and Google Analytics cookies), Meta Platforms, Inc. (Facebook cookies), Amazon.com, Inc. (Amazon cookies), TikTok Inc. (TikTok cookies), and more (collectively, the "Third Parties"). ECF 1 ¶¶ 41–42. Defendant thereby caused the collection and dissemination of users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more (collectively "Private Communications"). ECF 1 ¶ 26; *see id.* ¶¶ 24, 38.

This resulted in not only the disclosure of Website users' computer data such as IP and email addresses; but specific user communications, including Plaintiffs, such as search queries and search strings made on the Websites. *Id.* ¶¶ 24, 26. The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 25, 46–79. This is the exact type of tracking and data sharing that Plaintiffs and other Website users sought to avoid when they opted out of and declined such cookies.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiffs Plead a Concrete Injury-in-fact.

To have standing under Article III, Plaintiffs must allege a "concrete" injury, which is one that is "real" as opposed to "abstract," or hypothetical. *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). Intangible harms may still be concrete. *See id.* (discussing deprivations of rights as

concrete). Examples of concrete but intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion," and such harms have been "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In addition, "state law can create interests that support standing in federal courts." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 599 (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)).

Here, Plaintiffs allege they suffered actual harm when Defendant represented that they could opt out of or decline being tracked with the use of Functional and Advertising cookies on the Website; but Defendant still caused the Website to place Third Party Functional and Advertising cookies on their devices which allowed the Third Parties to collect their Private Communications. ECF 1 ¶¶ 24, 35–45. The Ninth Circuit has recognized that similar CIPA claims are concrete. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 602–03 (finding "standing to bring claims for invasion of privacy . . . as well as claims under . . . CIPA, because they adequately alleged privacy harms.").

Defendant argues that "Plaintiffs do not—and cannot—claim that any of their specific information was collected." ECF 12 at 6. There is no such requirement. *See*, *e.g.*, *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"). Even if there was, Defendant acknowledges that Plaintiffs have alleged specific categories of data which were allowed to be collected by the Third Parties against their express wishes. *See* ECF 12 at 10–11 (quoting ECF No. 1 ¶ 3 ("browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data[.]")). Further, contrary to Defendant's assertions (ECF 12 at 6, 8), Plaintiffs have specifically alleged that specific categories of information *are* collected, from them and all similarly situated. ECF 1 ¶ 24 (categories of Private Communications which Defendant allowed the third parties to "surreptitiously track in real time and collect Website users' personal information"); *id.* ¶¶ 27, 39–45. The Ninth Circuit has recognized these categories of information as protected under

California privacy statutes. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 596 (holding that plaintiffs had standing under CIPA for privacy violations when they alleged their URLs and IP addresses were collected and used without consent); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) (holding that plaintiffs had standing under CIPA for privacy violations when they alleged their URLs were collected and used without consent); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1105 (9th Cir. 2014) ("Facebook and Zynga argue that the plaintiffs lack standing because they have not suffered any concrete or particularized injury arising from the alleged disclosure of users' Facebook IDs and URL information to third parties. This argument has been foreclosed by *Edwards v. First American Corp*., which held that a plaintiff demonstrates an injury sufficient to satisfy Article III when bringing a claim under a statute that prohibits the defendant's conduct and grants persons in the plaintiff's position a right to judicial relief.") (internal quotation marks omitted).

Recently, in a similar case as this one, Judge Tigar in this District rejected the exact argument MFP advances here when the defendant argued that the plaintiff "merely described data that Motorola *could have* collected." *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16. The plaintiff there, like Plaintiffs here, alleged that the defendant's website "continued to load third-party scripts that placed tracking cookies on his device and transmitted them to companies like Google, TikTok, Amazon" and more, despite website users clicking "Reject All" cookies. *Id.* at *2–3. The court held that "the complaint alleges that Motorola in fact ignored [plaintiff's] rejection of cookies and 'continued to cause the placement and/or transmission of [third-party] cookies along with user data'" and "Motorola depriv[ing] him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing." *Id.* at *16–17. The same is true here. Plaintiffs have alleged that website users chose "to opt out of, decline, or reject non-required cookies, Defendant nonetheless continued to cause the Third Parties' cookies, including Functional and Advertising cookies[.]" ECF 1 ¶ 40. Accordingly, control of personally identifiable browsing history, including likes and dislikes, is a "concrete" interest that creates standing for privacy-related claims. *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th

Cir. 2020) ("We thus conclude that Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without consent URLs they had shared in private messages."); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, *tracks* a person's internet browser activity without authorization.").

When a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 924-25 (N.D. Cal. 2023) (collection of users' private browsing data without their consent is sufficient to confer standing); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) ("[V]iolations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact…") (brackets removed).

Defendant argues, incorrectly, that Plaintiffs only allege what the third party cookies "may be capable of collecting," and do not "establish what information these cookies actually collected." ECF 12 at 6. But Defendant's reliance on *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410 (E.D. Pa. July 17, 2024) is misplaced and supports finding standing in this case. ECF 12 at 6. As an initial matter, the *Hartley* court addressed Arizona law, not California law. Even so, *Hartley* is easily distinguishable. The plaintiff in *Hartley* alleged "spy pixels" were embedded in promotional emails and allowed the defendant to know how long an email was open, the recipient's email address, email path data, email viewing platform, and operating system. 740 F. Supp. 3d at 414. The court dismissed the claims and distinguished the relationship "between an unwelcome advertiser and a consumer who wanted to be left alone[,]" who would have standing; with one like the plaintiff in *Hartley* who "opted in to receiving emails from Defendant by joining its subscriber list [and] continued to consume its promotional materials by regularly opening them." *Id.* at 420. Here, the relationship is one akin to "an unwelcome advertiser and a consumer who wanted to be left alone;" Plaintiffs expressly opted out of and rejected functional and advertising cookies. But, as it turns out, Defendant's promise was a lie.

Defendant asserts that "Plaintiffs do not identify any information of *theirs* that was actually collected." ECF 12 at 8. But this reading strains credulity. As explained above, Defendant ignores the plain allegations specific to each Plaintiff. *See* ECF 1 ¶¶ 86–105. Plaintiffs each allege that contrary to their cookie rejection, "Defendant permitted the Third Parties to track and collect [Plaintiff's] Private Communications as [Plaintiff] browsed the Website." See ECF 1 ¶¶ 93, 103; *see also id.* ¶ 24 (defining "Private Communications"). Moreover, Plaintiffs have alleged that Defendant allows the Third Parties to collect data from *all* Website users. *Id.* ¶¶ 17–34; *see id.* ¶ 24 ("the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, causing them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant"). It necessarily follows that Plaintiffs' information was disclosed as well when they visited the Website, as pled.

Defendant next argues that "courts consistently have held that the mere collection of browsing history, page views and IP addresses, absent a tangible or concrete harm, does not constitute a sufficient injury to support legal claim." ECF 12 at 8. This misstates California law. Courts have routinely found that expressly promising consumers one thing and then turning around and doing the opposite supports privacy claims, particularly when it comes to tracking users' when they were expressly promised they would not be tracked. *See, e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 603 ("use of cookies to track and compile internet browsing histories" can invade users' privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns."); *Brown*, 685 F. Supp. 3d at 937–42 (denying summary judgment, finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode, and holding that there was a triable issue as to whether defendant's intrusion was highly offensive); *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting

was highly offensive); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their internet-wide browsing history).

Defendant's cited cases do not hold otherwise. For example, in *Bass v. Facebook, Inc.*, the plaintiffs sued defendant as a result of a security vulnerability which *potentially* allowed third parties to access user information. 394 F. Supp. 3d 1024, 1032 (N.D. Cal. 2019). The court dismissed one plaintiff's claims for lack of standing, not because of the type of information collected, but because he did not plead facts connecting him to the data breach. *Id.* at 1036. That is a far cry from the facts here; Plaintiffs allege that they visited the Website, read the cookie consent banner and Your Choices window, opted out of functional and advertising cookies, browsed the Website based on Defendant's representations, and had cookies placed on their devices while they browsed the Website. ECF 1 ¶¶ 86–95 (Plaintiff Shah's allegations); *id.* ¶¶ 96–105 (Plaintiff Wiley's allegations); *id.* ¶ 24 (categories of Private Communications which Defendant allowed the third parties to "surreptitiously track in real time and collect Website users' personal information").

Defendant next argues that Plaintiffs have failed to "allege *how* they have suffered economic harm." ECF 12 at 9. But Defendant conflates standing and damages. Defendant's concrete invasions of Plaintiffs' privacy and contractual rights are cognizable injuries which confers standing; valuing those injuries is different. Diminution in value is but one method for calculating Plaintiffs' injuries. *See* ECF 1 ¶¶ 124, 134, 154, 166, 187. This is sufficient for standing. *See, e.g., Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting motion for class certification for privacy claims when plaintiffs' damages were based on a "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection"). Defendant's reliance on *Hubbard v. Google LLC*, must be rejected because *Hubbard* "is not a case involving secret or deceptive data collection," but this case is. 2024 U.S. Dist. LEXIS 117876, at *23.

Defendant next claims that "Plaintiffs do not identify their devices or describe any loss of storage or value to them." ECF 12 at 9. But Plaintiffs allege that Defendant's conduct constituted a trespass and that the cookies reduced the function, performance, storage, and value

of Plaintiffs' devices. ECF 1 ¶¶ 189–193. The Ninth Circuit has already ruled that such breaches of privacy are an injury-in-fact sufficient to support standing to assert trespass to chattels. *See, e.g., In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels); *see In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices").

Defendant argues that Plaintiffs' claims fail because "third-party cookies are temporary, usually delete automatically and can be manually be deleted by Plaintiffs at any time." ECF 12 at 9. But this factual contention is in conflict with Plaintiffs' plain allegations. Plaintiffs have alleged they "do[] not know how the Website is programmed, which can change over time, and because [they] do[] not have the technical knowledge necessary to test whether the Website honors uses' requests to opt out of, decline, or reject all non-required cookies and tracking technologies." ECF 1 ¶¶ 95, 105. Plaintiffs have further alleged that determining whether Defendant is lying to consumers about the non-use of advertising and functional cookies requires specialized training related to software development which they do not have. *Id.*

Finally, Defendant argues that "Plaintiffs' claim that they no longer are willing to visit MFP's Website (Compl. ¶¶ 95, 105) is no injury at all." ECF 12 at 9. But this is a merely another (mis)representation by Defendant. Plaintiffs allege that they continue "to desire to browse content featured on the Website" and they "would likely browse the Website again in the future, but will not do so" until the Website is "programmed to honor users' requests to opt out of, decline, or otherwise reject all non-required cookies and tracking technologies[.]" ECF 1 ¶¶ 95, 105. These allegations confer standing to seek injunctive relief.

### B. Plaintiffs Adequately Plead Fraud, Deceit, and Misrepresentation.

Despite MFP's assertion to the contrary (ECF 12 at 6–7, 17–18), Plaintiffs have pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. They allege that Defendant (who), allowed the Third Parties to collect Website users' Private Communications despite promising they could opt out of or decline functional and advertising cookies (what), when users visited Defendant's Website on one or more occasions in the last four

years and clicked toggled off their cookie settings (when and where), and by integrating its Website with Third Party resources, including cookies that were stored on users' devices that transmit personal information about the users (how). *See, e.g.*, ECF 1 ¶¶ 1–5, 35–45, 80–85, 167–178 (alleging fraud); *id.* ¶¶ 17–34, 80, 168–169 (alleging intentional conduct); *id.* ¶¶ 88–91, 93, 98–101, 103, 170–171 (alleging reliance); *id.* ¶¶ 80–85, 94–95, 104–105 (alleging injury). This is clearly sufficient. *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *38 (finding plaintiffs identified the who, what, when, where and how of the misconduct).

Defendant disingenuously argues that "there are virtually no *factual* allegations regarding *Plaintiffs'* experiences." ECF 12 at 7 (emphasis in original); *see id.* at 17 ("Plaintiffs have failed to plead any facts about their own experience"). But this ignores Plaintiffs' allegations. Each Plaintiff has alleged that they visited the Website to learn about Defendant's products and services, read the cookie consent banner and Your Choices window, opted out of functional and advertising cookies, and browsed the Website based on Defendant's representations. ECF 1 ¶¶ 86–95 (Plaintiff Shah's allegations); *id.* ¶¶ 96–105 (Plaintiff Wiley's allegations). The specificity and evidentiary standard that Defendant demands is simply not required at this stage. For these reasons, Defendant's reliance on *Pirozzi v. Apple* fails. ECF 12 at 7; *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing complaint because plaintiff failed to allege she relied on the alleged misrepresentations).

Defendant also argues that "each claim fails because Plaintiffs do not allege actual damages." ECF 12 at 18. But Plaintiffs have adequately alleged damages, including compensatory damages, punitive damages, and unjust enrichment. *See* ECF 1 ¶¶ 80–85, 123–125, 133–135, 153–154, 165–166, 177–178, 187, 191–193. It is also clear that CIPA is not limited to "out-of-pocket damages," as relied on by Defendant (ECF 12 at 18), when it permits statutory damages. *Id.* ¶¶ 154, 166.

**C. Defendant's Scattershot 12(b)(6) Arguments Fail.**

**a. Plaintiffs adequately plead their common law privacy claims.**

The parties agree that California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into

a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Plaintiffs easily satisfy both requirements.

**(1) Plaintiffs allege a reasonable expectation of privacy.**

Defendant argues that "[c]ourts have routinely that public website visitors have no reasonable expectation of privacy in the very type of information purportedly at issue in this Complaint." ECF 12 at 10–11. But that ignores both the allegations and the applicable law. When evaluating whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 601. The question is "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Id*. (quoting *Hernandez*, 47 Cal. 4th at 286). Moreover, courts recognize that there is no blanket rule that "there can never be a reasonable expectation of privacy over internet activity." *Thomas v. Papa Johns Int'l, Inc*., No. 22cv2012 DMS (MSB), 2024 U.S. Dist. LEXIS 84019, at *4–6 (S.D. Cal. May 8, 2024). Context matters. Indeed, Defendant completely misses what separates this case from the cases it cites: its ***own representation*** that users could browse the Website without being tracked—i.e., they could opt out and reject functional and advertising cookies. That fact is outcome-determinative since "courts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Id*. (citing *In re Facebook*, 956 F.3d at 601–03); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2025 U.S. Dist. LEXIS 3238, at *17–19 (N.D. Cal. Jan. 7, 2025) (denying Google motion for summary judgment because representing that it would not save data and saving it created a disputed issue of material fact on whether there was a reasonable expectation of privacy); *Brown*, 685 F. Supp. 3d at 937–41 (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode based on defendant's representation); *Calhoun*, 526 F.Supp.3d at 630 (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on

defendant's representations that it would not receive user data while they were not synced); *In re Google Location History Litig*., 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (finding that it "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data"). None of Defendant's cases (ECF 12 at 11) are on point because none of them address a defendant's "surreptitious and unseen data collection." *In re Facebook Tracking*, 956 at 602.

Here, Defendant set Plaintiffs' reasonable expectation ***itself*** when it stated they (and all other users) could opt out of and reject functional and advertising cookies. ECF 1 ¶¶ 1, 35–45. Inherent in the offer was the recognition of the expectation of privacy in the type of data users opted out of sharing. Defendant simply duped them. Plaintiffs, who declined functional and advertising cookies, of course, had a reasonable expectation of privacy in their activities on the Website. *See Rodriguez v. Google*, 2025 U.S. Dist. LEXIS 3238, at *18–19.

To illustrate, imagine a store with a sign on the door stating that it had surveillance cameras from third-parties inside. The sign on the door also had two buttons: one that, if pressed, shoppers would consent to the surveillance, and another in which shoppers could decline the surveillance. The scenario here is akin to the store allowing third-parties to surveil shoppers *who affirmatively pressed the button (or entered the store after) declining the surveillance*. In such a scenario, the store, like Defendant here, set the expectation itself—through its own representations—that shoppers would not be surveilled if they opted out. As the California Supreme Court explained, "[t]he mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 916 (1999). Plaintiffs here did not consent to give ***any*** third-parties access to their information for tracking or marketing purposes. Defendant plainly violated norms when it failed to honor that express rejection. *See Brown*, 685 F. Supp. 3d at 926–28; *Calhoun*, 526 F.Supp.3d at 630; *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (consumer had a reasonable expectation in location data that a weather app shared with third parties).

**(2) Plaintiffs allege that MyFitnessPal's invasion of privacy was highly offensive.**

Defendant's collection and disclosure of data after promising visitors it would not do so is highly offensive. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *26–27 (holding that promising consumers that they could reject cookies and subsequently collecting information such as IP addresses, browsing history, and user preferences, can be highly offensive); *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36 (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) (denying motion to dismiss claims for intrusion upon seclusion and invasion of privacy where plaintiffs alleged that "Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries . . .'"); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced).

Even so, "courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.'" *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *26. The question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

Ignoring its promise, Defendant asserts that none of the alleged information is "highly offensive" and it is "routine commercial behavior." ECF 12 at 11. But telling consumers one

thing and then turning around and doing the opposite can hardly be described as "routine," particularly when it comes to tracking users' when they were expressly promised they would not be tracked. *See Brown*, 685 F. Supp. 3d at 937–42 (denying summary judgment, finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode, and holding that there was a triable issue as to whether defendant's intrusion was highly offensive).

Defendant relies on long outdated cases, including *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) and *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014), but more recent cases, such as *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 602–03 (discussed *supra*), have overruled those older cases. Under current law, the "use of cookies to track and compile internet browsing histories" can invade users' privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns." *Id.* at 603. Thus, recent district court decisions have recognized that the tracking and amassing of online data without consent is highly offensive. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *27 (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy).

**(3) Plaintiffs' Claims Are Not Barred by the Statute of Limitations.**

Defendant next argues that Plaintiffs "have not alleged facts sufficient to place themselves within the applicable statute of limitations period." ECF 12 at 10. But "in general a complaint need not anticipate the defense with allegations as to why the claims are timely." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *19 (C.D. Cal. Dec. 20, 2023). "Thus, a claim may be dismissed under

Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations ***only*** when the running of the statute is apparent on the face of the complaint." *Van Saher v. Norton Simon Mus. of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (internal quotations omitted). Here, Plaintiffs have alleged that their claims arose during the applicable statute of limitations by virtue of their website visits during the past four years. Thus, Plaintiffs have properly alleged their claims fall within the applicable statute of limitations.

Even so, the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *40 (C.D. Cal. Dec. 20, 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)). Here, Plaintiffs have alleged they do not know how the Website is programmed and determining whether Defendant is still placing unauthorized cookies and transmitting data to third parties requires specialized software developer training. ECF 1 ¶¶ 95, 105. Should the Court require, on amendment, Plaintiffs can include the date they learned of the basis for their causes of action.[1]

**b. Plaintiffs Have Adequately Pled CIPA Claims.**

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth clause of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up); *see* ECF 1 No. ¶¶ 136–155. This clause "can apply to internet communications." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d

[1] Defendant raises this same statute of limitation defense in support of dismissing all claims, but those arguments fail for the same reasons. ECF 12 at 12 ("Plaintiffs filed this lawsuit on May 23, 2025, and merely allege to have visited the Website 'during the last four years,'"); *id.* at 16 ("the pen register claim is time barred under the one-year statute of limitations."); *id.* at 18 ("Plaintiffs once again failed to plead facts to place them within the applicable statute of limitations of this claim"); *id.* at 20 ("These screenshots and references are undated and therefore not within any applicable statute of limitations.")

1104, 1116 (S.D. Cal. 2024) (citing *Cody v. Ring LLC*, Case No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024)); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").[2]

Second, Plaintiffs allege that Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented installation and use of "pen registers" and "trap and trace devices." ECF 1 ¶¶ 156–166. Defendant's challenges to these claims are meritless.

**c. Plaintiffs Properly Allege a Violation of CIPA Section 631(a).**

Plaintiffs have alleged that Defendant integrated the Website with Third Party code that enables the Third Parties to use cookies to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." ECF 1 ¶ 45. The Complaint includes extensive allegations describing how the cookies placed by the Third Parties transmit communications "in real time." *See, e.g., id.* ¶¶ 24, 40–79. Specifically, Plaintiffs allege that "the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id.* ¶ 24. Plaintiffs further demonstrate the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 41–42. As depicted, "despite the user's rejection of all cookies, the user's interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains like twitter.com; td.doubleclick.net; listrakbi.com; analytics.google.com, and others. As further shown in the right-hand column of the screenshots, the user's browser sent cookies along with those HTTP requests to the third parties." *Id.* ¶ 42.

[2] MFP's arguments that the first clause under 631(a) "does not apply to online conduct" (ECF 12 at 13) is misplaced because Plaintiffs allege that MFP aided and abetted eavesdropping and unlawful use of information of the fourth clause of 631(a) (incorporating the second and third clauses).

**(1) The information is intercepted while in transit.**

Defendant suggests that Plaintiffs do not allege that third parties intercepted Plaintiffs' communications "while" in transit. ECF 12 at 23. Plaintiffs must allege that "the interception must occur contemporaneous with the sending or receipt of the message," *see Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Plaintiffs clearly do so here. Not only have Plaintiffs explained how third-party cookies operate, they identify specific examples of the cookies at issue that transmit data in real time. ECF 1 ¶¶ 46–79. The cases cited by Defendant in support are easily distinguishable. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476, at *7–10 (N.D. Cal. Jan. 25, 2022) (plaintiffs specifically alleged that Google logged their data and then *subsequently* transmitted it, failed to describe how Google intercepted the relevant data in real time, and then made some vague and inapposite references to "real-time ad bidding," which was a separate issue); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (vague allegations insufficient to establish interception "during transmission").

**(2) Plaintiffs allege "contents" were intercepted.**

CIPA prohibits interception of "contents" communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). Here, Plaintiffs allege interception of "contents," including user input data such as "search queries, the user's name, age, gender, email address, location, and/or payment information". ECF 1 ¶ 24; *id.* ¶ 149 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data").

Defendant argues that all of the information alleged to have been intercepted by the Third Parties is merely "record information," relying on a convenient use of "etc." to glaze over the plain allegations in the Complaint. ECF 12 at 14 (identifying allegations related to "browsing

history, page views, etc."). But this ignores not only Plaintiff's detailed allegations about the interception of user input data, but also the overwhelming case law that supports that user input data such as search terms is "contents" under CIPA. *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Zynga*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *11 (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content"). Plaintiffs have alleged that search terms are also allowed to be intercepted by the Third Parties. ECF 1 ¶ 24. Further, Defendant tacitly admits that Plaintiffs' CIPA pen register theory survives because they have alleged "record information."

In conclusory fashion, Defendant argues that the Complaint fails to allege "violation of the first or second clauses," and therefore have "also failed to plead a violation of the third clause." ECF 12 at 15. However, as described above, the Complaint clearly alleges CIPA violations by at least the Third Parties named in the Complaint. ECF 1 ¶¶ 2–5, 46–79 (identifying unconsented wiretapping via cookies placed by Meta, Google, TikTok, Amazon and more); *see also id.* ¶¶ 41–42, 46–47, 54–55, 66–67, 76–78, 145–148 (Third parties made an intentional tap or unauthorized connection); *id.* ¶¶ 41–42, 53, 64–65, 72, 76–79, 144–145 (with any line, cable, or instrument—i.e., cookies in internet communications); *id.* ¶¶ 27–38 (willfully and without consent of all parties); *id.* ¶¶ 41–43, 52, 57, 68, 149 (reads or learns the contents of any communication while in transit); *id.* ¶¶ 45–79, 150 (uses any information so obtained). Thus, Defendant's arguments sink on the detailed factual allegations about the Third Party cookies. *Id.*

**(3) Plaintiffs allege "aiding" under CIPA.**

Defendant next argues that Plaintiffs "cannot plausibly allege that MFP knew that the ubiquitous cookie technology at issue, which was designed and offered for commercial use by reputable companies like Meta, inherently violates CIPA." ECF 12 at 15.

Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the Ninth Circuit's analysis of intent in the Wiretap Act is instructive. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quotation omitted). "The Ninth Circuit rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires "an intentional act, defined as an act that is being done on purpose." *Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. Feb. 12, 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)).

Thus, courts in this Circuit regularly hold that intent under CIPA is satisfied by pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *29; *Doe v. Amgen, Inc*., No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of whether Defendant specifically intended to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

Here, Plaintiffs have alleged that Defendant owns and operates the Website and chose to install the Third Party resources on the Website. ECF 1 ¶ 20. Plaintiffs also allege that Defendant knew or should have known "how the Websites functioned, including the Third Party's resources it installed on the Websites and the third-party cookies in use on the Websites, through testing the Websites, evaluating its performance metrics by means of its accounts with the Third Parties." ECF 1 ¶ 170. Defendant cannot plausibly claim it does not know how its Website operates.

Defendant's argument that Plaintiffs cannot show that "MFP placed these technologies on their site *for the purpose of* aiding or employing these third parties to violate CIPA, as opposed to the legitimate, commercial business purposes for which these technologies are so clearly

intended" is a red herring. ECF 12 at 15. Whether the purpose was "legitimate" is an improper contention of fact at this stage. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *29. The complaint "sufficiently alleges that [defendant] intentionally operated its website and assisted third parties in collecting [plaintiff's] information," and therefore Plaintiffs have stated a claim. *See id.*

Defendant's reliance on *Smith v. Yeti Coolers, LLC* is misplaced. ECF 12 at 15. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *1 (N.D. Cal. Oct. 21, 2024). The *Yeti* court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at *12. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its website. Here, Plaintiffs have alleged that Defendant integrated the third-party resources on the Website, which placed and transmitted cookies *in order* to obtain user data for advertising purposes. ECF 1 ¶¶ 20, 24–27, 46–79. There is no alternative purpose for the Third Party cookies here as there was in *Yeti*. Defendant did not disable this software or prevent the Third Parties from obtaining user data even after it solicited user consent and obtained users' express rejection of such cookies. *Id.* ¶¶ 1–3. Defendant cannot plausibly claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users' Private Communications; it integrated the Third Party code into its Website to do exactly that.[3]

---

[3] Moreover, Defendant's characterization of *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, like Defendant does here, argued that the plaintiff must show the "'specific intent to commit the unlawful acts'" 2024 U.S. Dist. LEXIS 194481, at *11. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs allege more than "some" level of intent and knowledge (as explained above) because Defendant owns the Websites and installed the third-party resources which allowed the Third Parties to track the Website users. ECF 1 ¶ 20.

**d. CIPA section 638.51 is not limited to telephones.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this claim. Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Defendant on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information." ECF 1 ¶ 160.

Defendant argues "Section 638.51 and related sections of A.B. 929 demonstrates that they apply to devices used to conduct telephonic surveillance by capturing outgoing telephone calls—not online cookie tracking technology." ECF 12 at 16. But Judge Tigar rejected this exact argument. *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *30 ("If the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations."). So too have other courts in this District. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing

information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Like the plaintiffs in *Gabrielli, Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Defendant on its Websites are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* ECF 1 ¶ 161 (explaining "cookies and the corresponding software code—which are pen registers—[were] placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information"). Thus, Defendant's argument limiting pen register claims to telephones fails.

Defendant claims Plaintiffs "plead themselves out of a pen register claim by alleging that only '*some* of the information collected' by third-party cookies on the Website 'does not constitute the content' of their communications with the Websites." ECF 12 at 16 (emphasis in original). But Defendant fails to recognize that some cookies may include "content," while others may include only "record" information. *See, e.g.*, ECF No 1 ¶¶ 46–79 (identifying different types of information collected by different cookies). Thus, the Complaint properly pleads that certain cookies contain "contents" while others contain "record information." There is no inconsistency. Even so, Plaintiffs can plead these claims in the alternative.[4]

**D. Plaintiffs Unjust Enrichment Claim May Proceed.**

Defendant contends that Plaintiffs' unjust enrichment claim is barred "because 'in

---

[4] Defendant separately argues that Plaintiffs "must establish scienter" for their pen register claims. ECF 12 at 27. However, Defendant does not cite a single case holding that there is a separate "scienter" requirement for CIPA pen register claims. Rather, as demonstrated by the case Defendant cites, the intent requirement lies in clause four of section 631(a), i.e., that the act be intentional. As discussed above, Plaintiffs allege Defendant the owns and operates the Website and chose to install the Third Party resources on the Website. *See supra* section IV.C.c(3). *Cf. Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1019 (C.D. Cal. 2023) (discussing intent to aid and abet). Nothing more is required.

California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." ECF 12 at 18. Not so. The Ninth Circuit regularly allows independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting unjust enrichment claim to proceed). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claims in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

**E. Plaintiffs Sufficiently Plead Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "interfere[] with the intended functioning of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012).

The Complaint here pleads trespass to chattels. As explained above, Plaintiffs have adequately alleged that Defendant intentionally caused cookies to be placed on their computers and/or devices. ECF 1 ¶¶ 35–45, 192. Indeed, Defendant admits that it intentionally causes third-party cookies to be placed on Website users' devices because it admits it obtained and installed such cookie technology from "reputable companies like Meta." ECF 12 at 15. And Plaintiffs have adequately alleged they opted out of and declined functional and advertising cookies. *Id.* ¶¶

35–40, 88–91, 98–101. Defendant caused the placement of third-party cookies onto Plaintiffs' devices and browsers, taking up storage space in an unauthorized manner, and materially altering and misappropriating the functioning of Plaintiffs' devices and browsers (causing them to take Plaintiffs' data and send it to third parties, after Plaintiffs had specifically sought to block such unauthorized use of their devices and browsers). *Id.*

Defendant cherry-picks a single allegation and claims that Plaintiffs' "conclusory allegations of 'intent' . . . are belied by the allegation that cookies were placed on Plaintiffs' browsers automatically." ECF 12 at 19. Again, Defendant misrepresents Plaintiffs' claims. It is clear that Defendant intentionally designed its website to allow the Third Party cookies be installed when a user visited the Website. ECF 1 ¶ 20. Moreover, based on Defendant's Website design, cookies are placed automatically *after* a user has rejected functional and advertising cookies. Thus, because Defendant integrated the "Third-party resources" into its Website programming that caused cookies to be placed, and it designed its Website to place cookies after a user declined consent, Defendant intentionally interfered with Plaintiffs' possessory interest in their computers.

Defendant next argues that Plaintiffs fail to allege "what their browser settings were [or] what cookies attached to *their devices*." ECF 12 at 19. This argument begs the question of whether Defendant read Plaintiff's complaint. Plaintiffs allege that Defendant's unauthorized use resulted in damage by reducing storage, disk space, and performance of Plaintiffs' and other Class members computing devices. ECF 1 ¶ 193. This includes reducing the intended function of the system—i.e. Plaintiffs' ability to use their devices and browsers without being tracked by the Third Parties. Such breaches of privacy are sufficient to support the injury element of a claim for trespass to chattels. *See In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 601; *see also In re Meta Healthcare Pixel Litig*., 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices").

## V. THE COURT MUST REJECT THE MOTION TO STRIKE

Defendant's motion to strike is meritless. ECF 12 at 19–20. The screenshots of Defendant's Website and the cookies it caused to be placed on Website user's devices after rejecting functional and advertising cookies are clearly relevant to Plaintiffs' claims that Defendant allowed the Third Parties to intercept their Private Communications despite Website users' express rejection of such cookies.

Defendant also claims, without any support, that the "screenshots and references are undated and therefore not within any applicable statute of limitations." ECF 12 at 20. But this is clearly a factual issue; if Defendant wants to disprove the allegations in the Complaint, it can do so through the appropriate motion.

Defendant next claims that Plaintiffs' class allegations must be struck because Plaintiffs class is overbroad. ECF 12 at 21. But as Defendant acknowledges, a fail-safe class is impermissible and Plaintiffs' proposed class may be narrowed as necessary as discovery progresses. Next, Defendant claims that there are "insurmountable hurdles" such as Website user location, the cookies transmitted, and the browsers used. ECF 12 at 21. Similar arguments are commonly rejected by courts in this District. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *43 ("As this Court has done in prior cases, it 'declines to strike the class allegations here where discovery has not yet commenced and the issues raised by [Defendants] are ones to be addressed at the class certification, not the motion to dismiss, stage.'").

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's motion to dismiss or, in the alternative, grant Plaintiffs leave to amend. Plaintiffs respectfully request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

Dated: August 14, 2025

**GUTRIDE SAFIER LLP**

*/s/ Hayley Reynolds*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*