UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>MYFITNESSPAL, INC.,<br><br>　　　　Defendant. | Case No. 25-cv-04430-PCP<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

In their class action complaint, plaintiffs Vishal Shah and Christine Wiley allege that defendant MyFitnessPal (MFP) violated their privacy rights by placing certain cookies on their devices even though they had expressly opted out of receiving such cookies. MFP moves to dismiss plaintiffs' lawsuit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). MFP also moves to strike several of plaintiffs' allegations as well as their class definition. For the reasons stated below, the Court grants in part and denies in part MFP's motion to dismiss and denies MFP's motion to strike.

## BACKGROUND

MyFitnessPal is a nutrition and fitness app that allows users to track their health, including by logging their diet and exercise.[1] The MFP website promotes the MFP app and uses first- and third-party cookies, short text files that identify users to websites that get stored locally on users' devices. Third-party cookies allow a third party (i.e., someone other than MFP itself) to track that user across different websites. Owners of websites can use cookies to analyze users' behavior, personalize information presented, target advertising, and integrate social media functions.

MFP presented users with a choice as to how they would be tracked while on MFP's

---

[1] The Court assumes the truth of the allegations in the complaint for the purposes of defendant's Rule 12(b)(6) motion.

website. MFP's privacy policy explains that its website uses cookies and that users "can block and control cookies using the information noted in this section." Specifically, MFP told users that they used three types of cookies—Required Cookies, Functional Cookies, and Advertising Cookies—and that users could opt out of receiving the Functional and Advertising Cookies by indicating that choice in response to a popup cooking consent banner on the website.

Plaintiffs' complaint alleges that MFP "outright lie[d]." Plaintiffs alleged that even after users opted out, MFP still "caused the Third-Party tracking cookies, including Functional and Advertising cookies, to be placed on Website users' browsers and devices and/or transmitted to the Third Parties along with user data." Plaintiffs allege that these third-party cookies were used to track their interactions with MFP, such as their browsing history, visit history, website interactions including clicks, user input data such as search queries, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data. Plaintiffs allege that MFP allowed Facebook, Google, TikTok, Amazon, and The Trade Desk to gather information on users.

Plaintiffs Shah and Wiley are residents of California. They allege that they visited MFP's website "on one or more occasions during the last four years," and that MFP placed Functional and Advertising cookies on their devices after they had opted out of receiving such cookies. They sue on behalf of themselves and a proposed class of similarly situated people. They bring claims for invasion of privacy, intrusion upon seclusion, wiretapping in violation of the California Invasion of Privacy Act (CIPA), use of a pen register in violation of CIPA, fraud, unjust enrichment, and trespass to chattels. Plaintiffs seek damages, injunctive relief, and fees and costs.

MFP now moves to dismiss plaintiffs' complaint for failure to state a claim and moves to strike certain allegations, including plaintiffs' class allegations.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to make a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing

the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**ANALYSIS**

**I.     Motion to Dismiss**

    **A.     Article III Standing**

Article III limits the federal courts' jurisdiction to cases and controversies. U.S. Const. art. III, § 2. A "case or controversy under Article III" requires that a plaintiff have "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). At issue here is the requirement that plaintiffs have suffered an "injury in fact" that is "concrete, particularized, and actual or imminent." *Id.* MFP argues that plaintiffs have not pleaded such an injury because they do not plead that their personal information was "actually collected" or that they were injured by such collection.

MFP relies primarily on *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025), in which the Ninth Circuit recently held that a plaintiff had not established a concrete injury-in-fact for Article III standing purposes stemming from Microsoft's "session-replay technology," which enables businesses to track users' browsing activity. The panel explained that the plaintiff had not

established "how the tracking of her interactions … caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791. The court explained that "the kind of harm and not the degree" is relevant for determining whether an alleged injury-in-fact is concrete enough relative "to a *specific* common-law tort" and that the injury must be one "that has traditionally been actionable in our nation's legal system." *Id.*

Unlike the plaintiff in *Popa*, the kind of injury that Shah and Wiley allegedly suffered is similar to a harm recognized at common law—specifically, the harm made actionable by the common law public-disclosure-of-private-facts tort. That tort prohibits the "disclosure … of a private fact … which would be offensive and objectionable to the reasonable person, and … which is not of legitimate public concern." *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007) The Restatement (Second) of Torts (which *Popa* cited approvingly, *see* 153 F.4th at 791) explains that misrepresenting how private information will be used can constitute such an invasion of privacy, *see* Restatement (Second) of Torts, § 652D cmt. C, illus. 11. Plaintiffs here allege that MFP told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared. This harm is thus similar in kind to a harm recognized as actionable at common law. *See Morgan v. Twitter, Inc.*, 2025 WL 1248821, at *1, *2 (9th Cir. Apr. 30, 2025) (analogizing to the common law intrusion upon seclusion tort in concluding that plaintiffs had pleaded Article III standing under Washington state law).

The sensitivity of the information at issue is also relevant in determining whether the plaintiff has adequately pleaded Article III injury. *Popa* noted, for example, that the plaintiff's privacy interest in her "pet-store preferences and her street name" did not implicate any "sensitive sphere" like the examples provided in the Restatement. 153 F.4th at 792. By contrast, the type of information allegedly collected here—which included interactions with MFP related to personal topics like nutrition and fitness tracking—could plausibly be understood at this stage of the proceedings to be "embarrassing, invasive, or otherwise private information." *Id.* at 791.

In short, because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable

4

invasions of privacy at common law, plaintiffs have sufficiently pleaded an injury-in-fact for the purposes of Article III.

MFP separately argues that plaintiffs have only included "general allegations" about cookies and what third parties "may be capable of collecting" but not what cookies were "actually collected." But plaintiffs have alleged that third parties "surreptitiously obtained" a wide range of information about them specifically, including their "browsing history, visit history, website interactions," and more. Plaintiffs allege, and the Court must accept as true on MFP's facial challenge to plaintiffs' standing, that MFP both lied to them and collected the kind of information about them alleged in the complaint.

### B.    Statute of Limitations

Shah and Wiley allege that they visited MFP's website "on one or more occasions during the last four years" but do not allege a specific date on which they visited. Because a portion of the alleged four-year period falls outside the applicable statutes of limitations, MFP argues that plaintiffs' invasion of privacy, intrusion upon seclusion, wiretapping, pen register, fraud, and trespass-to-chattels claims are untimely.

Because plaintiffs bring state law claims, California's statutes of limitations apply. *See Nev. Power Co. v. Monsanto*, 955 F.2d 1304, 1306 (9th Cir. 1992). The applicable statutes of limitations ranges are two years for the invasion-of-privacy and intrusion-upon-seclusion claims, Cal. Civ. Proc. Code § 335.1; *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021), one year for the CIPA wiretapping and pen register claims, *see* Cal. Civ. Proc. Code § 340; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020), and three years for the fraud and trespass-to-chattels claims, Cal. Civ. Proc. Code §§ 338(c), (d).

The statute of limitations is "generally an affirmative defense rather than an element of the plaintiff's claim." *Turner v. Google LLC*, 737 F. Supp. 3d 869, 877 (N.D. Cal. 2024). Affirmative defenses do not provide a basis for dismissal under Rule 12(b)(6) unless the plaintiffs have pleaded themselves out of a claim by "admit[ting] all the ingredients of an impenetrable defense," *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018), meaning that the plaintiffs' pleaded facts demonstrate no "potential factual dispute that could affect whether the

5

defense applies," *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024). Where the defendant moves to dismiss a claim as untimely under the applicable statute of limitations, the motion can be granted "only when 'the running of the statute is apparent on the face of the complaint.'" *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

Here, plaintiffs' complaint does not admit the ingredients of an impenetrable statute of limitations defense. "The face of the complaint," *Huynh*, 465 F.3d at 997, alleges that plaintiffs "visited the Website to seek information about MyFitnessPal's products or services, … on one or more occasions during the last four years." The "last four years" includes the past one, two, or three years, so it is entirely possible, from the face of the complaint, that plaintiffs' claims are timely. Therefore, those claims cannot be dismissed as untimely on a Rule 12(b)(6) motion.

### C. Invasion of Privacy and Intrusion Upon Seclusion

MFP argues that plaintiffs have failed to adequately plead the substantive elements of their causes of action for invasion of privacy and intrusion upon seclusion. Because both causes of actions have similar elements, they are considered together. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Both require plausibly alleging, first, that the plaintiff had a "reasonable expectation of privacy" and, second, that the defendant's intrusion was "highly offensive." *Id.*; *see also Hammerling v. Google*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. July 18, 2022).

*Reasonable Expectation of Privacy*

MFP argues that plaintiffs' allegations do not indicate that they had a reasonable expectation of privacy in the specific browsing information plaintiffs allege MFP shared. Whether one has a reasonable expectation of privacy is a mixed question of law and fact, informed by "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms." *See In re Facebook*, 956 F.3d at 601–02 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). "To make this determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)).

6

In support of their privacy claims, plaintiffs allege that MFP told them that it would not collect certain data using cookies on their computers and that plaintiffs thought that they were opting out of tracking that MFP nevertheless facilitated. Plaintiffs allege that the information MFP collected on them included "their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data."

MFP is correct that the type of information at issue, standing alone, may not involve information in which users have an unqualified expectation of privacy. But in this case, MFP allegedly told plaintiffs that it would not collect information for advertising or analytics if they opted out of such collection. A reasonable visitor to MFP's website who chose to opt out of optional cookies would thus reasonably expect MFP not to install such cookies on their devices. Further, MFP's "primary product is a smartphone application and website of the same name designed to help users track their calorie intake, exercise, and health and fitness goals," and users may have a reasonable expectation of privacy in that type of information. *E.g.*, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (distinguishing geolocation data from data that implicates bodily autonomy).

MFP's alleged affirmative misrepresentation distinguishes this action from the cases MFP cites. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185; *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024). For example, in *D'Angelo v. FCA*, plaintiffs sued Dodge for not informing them that Dodge.com allowed Salesforce to intercept and analyze their chats. 726 F. Supp. 3d at 1187–88. In relevant part, the district court held that the data allegedly collected—including "the user's account name, IP address, geographic location, and site the user previously visited"—were not "sensitive" enough to "give rise to an invasion of privacy." *Id.* at 1206. At the same time, the court found it relevant that "Plaintiffs d[id] not allege that Defendant set out an expectation that it would not collect chat conversations…." *Id.* at 1205. In contrast, here, MFP "set out an expectation that it would not collect" plaintiffs' information from Functional or Advertising cookies. *Id. D'Angelo* and other cases where the website owner did not create such an expectation are therefore

7

inapposite.

The California Consumer Privacy Act (CCPA) further supports the conclusion that plaintiffs Shah and Wiley had a reasonable expectation of privacy in the information that was collected by cookies they had attempted to reject. As the California Attorney general's website explains, the CCPA requires that companies give users the choice to opt out of any collection of personal information for "cross-context behavioral advertising, which is the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's online activity across numerous websites." California Consumer Privacy Act, Off. of the Attorney General, State of California (Mar. 13, 2024), https://oag.ca.gov/privacy/ccpa.

When evaluating Californians' reasonable expectations of privacy, the CCPA's provisions are highly relevant "customs, practices, and circumstances," *In re Facebook*, 956 F.3d at 602, because they provide Californians with the reasonable expectation that they will have some control over their data and necessarily shape users' expectations about their ability to opt out of websites' collection of data for profit. Cases decided prior to the 2020 adoption of the CCPA are thus of limited value in considering users' reasonable post-enactment expectations. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098; *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198; *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041 (N.D. Cal. 2015). Today, when California users visit a website, they can expect to see a popup screen giving them the option to opt out of various types of tracking. Because many of the cases MFP cites do not consider this changed circumstance, they do not persuasively establish the absence of a reasonable expectation of privacy with respect to the forms of post-CCPA data collection at issue here.

Considering both MFP's affirmative representation that users could opt out of the tracking at issue here and the CCPA, the "customs, practices, and circumstances" surrounding plaintiffs' visits to MFP's website gave them a reasonable expectation of privacy with respect to the data whose collection MFP allegedly facilitated. *In re Facebook*, 956 F.3d at 602.

*Highly Offensive*

MFP argues that even if plaintiffs had a reasonable expectation of privacy, the alleged data collection and dissemination was not "highly offensive." Whether a particular invasion or

8

intrusion was "highly offensive" presents a mixed question of law and fact, *see Hill*, 7 Cal. 4th at 40, and requires considering the "degree and setting of the intrusion" and "the intruder's motives and objectives," *Hernandez*, 47 Cal. 4th at 295. The "ultimate question of whether … tracking and collection practices could highly offend a reasonable individual is an issue that [often] cannot be resolved at the pleading stage." *See In re Facebook*, 956 F.3d at 606. As a result, dismissal under Rule 12(b)(6) is appropriate only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests." *Hill*, 7 Cal. 4th at 40. "[D]eceit can be a kind of 'plus' factor" in determining whether an action is highly offensive. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) (quoting *Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019)).

Here, plaintiffs have pleaded that MFP affirmatively promised not to enable the tracking of plaintiffs' browsing behavior. Plaintiffs allege not only that they understood MFP to be promising not to track them with Functional or Advertising cookies but also that they "would not have used the Websites" otherwise. MFP thus not only misled users into thinking that their opt outs would be effective but led them to engage in tracked conduct they otherwise would not have undertaken. Given that the plaintiffs have alleged both an invasion of their reasonable expectation of privacy and that this invasion was undertaken through deceptive conduct, plaintiffs have pleaded facts sufficient to preclude the Court from concluding, as a matter of law, that MFP's invasion was not "highly offensive," especially given the information's potentially sensitive nature.

In arguing that enabling third-party data collection and disclosure was not "highly offensive," MFP relies on *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. June 12, 2012), and *Hammerling v. Google LLC*, 615 F. Supp. 3d 1060 (N.D. Cal. July 18, 2022). But neither case involved a specific promise that users would not be tracked in specific ways. *See In re iPhone*, 844 F. Supp. 2d at 1049–50; *Hammerling*, 615 F. Supp. 3d at 1078–79. Likewise, although the district court in *Morilha v. Alphabet Inc.*, 2024 WL 5205542 (N.D. Cal. Dec. 23, 2024), concluded that "disclosure of IP addresses and geolocation data is not sufficiently 'egregious' to support an invasion of privacy claim," *id.* at *4, plaintiffs here allege that a broader

9

set of data was collected and disseminated, including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." Similarly, in *Jones v. Tonal Systems, Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. Sept. 30, 2024), the court dismissed plaintiff's claim because she "only allude[d] to the possibility that chat feature conversations could be 'private and deeply personal'" and cited an inapposite study. *Id.* at 1043–44. In contrast, here, plaintiffs have identified specific kinds of information whose sharing, despite MFP's contrary representations, could plausibly be deemed "highly offensive."

Because plaintiffs have pleaded each required element of their invasion of privacy and intrusion upon seclusion claim, MFP's motion to dismiss those claims is denied.

**D.     Wiretapping**

California Penal Code § 631(a) prohibits

1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally tap[ping] or mak[ing] any unauthorized connection … with any telegraph or telephone wire, line, cable, or instrument"

2) "willfully and without consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the content or meaning of a message, report, or communication while the same is in transit"

3) "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" and

4) "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

MFP argues that plaintiffs have inadequately alleged that MFP violated Clause 2 because Clause 2 applies only when a third party reads "the contents or meaning of any message, report, or communication" and only when it is "in transit." MFP further argues that because Clauses 3 and 4 depend on a violation of Clause 2, plaintiffs have failed to adequately plead violations of Clauses

10

3 or 4.[2] And MFP argues that even if plaintiffs have adequately pleaded that third parties violated CIPA, they have not pleaded that MFP aided those third parties because they have not alleged the requisite intent.

Clause 2 of California Penal Code Section 631(a) prohibits "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the content or meaning of any message, report, or communication while the same is in transit." MFP argues that "contents" of communications were not intercepted.

Interpreting a similar federal provision in the Electronic Communications Privacy Act of 1986, the Ninth Circuit has distinguished between the contents of a message—i.e., the "intended message conveyed by the communication" including "any information concerning the substance, purport, or meaning of a communication"—and "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) (citing 18 U.S.C. §§ 2511(3)(a), 2702(a), 2510(8)). Whether a particular form of information involves the "contents" of a communication as opposed to mere "record information" depends on context. *See id.* For example, "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." *Id.* at 1108–09; *see also Brown v. Google*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) (holding that "full-string detailed URLs" that indicate search queries can be "contents" under the Wiretap Act).

Plaintiffs allege that third parties intercepted users' "affirmative decisions, actions, choices, preferences, and activities, … including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers and/or geolocation data." While many of these categories of information appear to involve record information rather than the contents of users' communications, the alleged tracking also included "website interactions," "user input data," "shopping behaviors," and "referring URLs." This

---

[2] Plaintiffs disclaim any claim under Clause 1 and bring their wiretapping claims only under Clauses 2 and 3.

11

information could convey, among other things, what users were searching for or what they wanted to do on MFP's website. Both types of information would likely entail queries or clicks from users revealing the "contents" of users' communications with MFP's website. *See Jane Doe v. Eating Recovery Ctr. LLC*, 23-cv-05561-VC at 7–8 (N.D. Cal. Oct. 17, 2025) (concluding that data suffices as content under CIPA § 631 when it "conveys far more than basic identification and address information"). That MFP allegedly tracked users in interactions relating to their health further supports the conclusion that MFP was tracking the "contents" of users' communications and not merely record information.

The problem with plaintiffs' wiretapping claim is that plaintiffs do not specifically allege that *their* communications were intercepted by any third parties. Plaintiffs repeatedly allege that MFP enabled third parties to track the information and communications of "Website users." But with respect to *their own* interactions with MFP's websites, plaintiffs allege only that they visited the website and chose to opt out of certain cookies. They do not allege that, in interacting with MFP's website, they personally engaged in any communications with the websites whose content could have been intercepted. *Cf. Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077, 1083 (C.D. Cal. 2021); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 854–55, 861–62 (C.D. Cal. 2024); *Brown v. Google LLC*, 685 F. Supp.3d at 936–39; *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *2 (N.D. Cal. Oct. 1, 2024); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). In the absence of any allegation that plaintiffs themselves interacted with the websites in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid wiretapping claim. That claim is therefore dismissed with leave to amend.

### E.     Pen Register

California Penal Code Section 638.51(a) prohibits "install[ing] or us[ing] a pen register" without a court order under specific circumstances. Section 638.50(b) defines a "pen register" as "a device or process that record or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."

12

MFP first argues that California's pen register law only applies to telephones. The text of the statute, however, contains no such limitation, even though other sections of CIPA are expressly so limited. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) (citing Cal. Penal Code §§ 631(a), 632.7). This is a strong indication that MFP's proposed limitation misconstrues the statute.

MFP's construction is also inconsistent with the California Legislature's purpose in enacting CIPA. In interpreting statutory ambiguities in state laws, "California courts 'determine the Legislature's intent so as to effectuate the law's purpose.'" *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (quoting *Skidgel v. Cal. Unemp. Ins. Appeals Bd.*, 12 Cal. 5th 1, 14 (2021)). The California Legislature enacted CIPA and prohibited pen registers to "protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) (cleaned up). CIPA's purpose of protecting individuals' privacy would be ill-served by limiting Section 638.51 to telephones in the absence of a strong textual basis for that limitation.

In support of its argument that pen register claims only apply to telephones, MFP points to different statutory text and to CIPA's legislative history. MFP notes that Section 638.52(d), which establishes the content of a judicial order permitting a pen register, requires specifying the "number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached…." *See* Cal. Penal Code. § 638.52(d)(3). In MFP's view, these references to telephone line-specific features demonstrate that the entire pen register statute applies only to telephones.

But this limited textual provision suggesting that pen registers generally involve telephones cannot trump the express statutory definition of pen register, which is not so limited. To the contrary, a fair reading of Section 638.52(d) would allow an officer seeking a judicial order for an online pen register to provide the equivalent of a "number" for the online device. The broader, more capacious definition of Section 638.50 applies to more devices than the later statutory sections might envision.

13

The legislative history MFP cites also does not prove that pen register claims in California only apply to telephone calls. While specific portions of the legislative history shows that members of California's legislature envisioned that pen registers "generally track incoming and outgoing calls," the language that it chose was not so limited. Again, if California sought to limit pen register claims to telephones, it knew how to do so (and in fact did so in other sections of the statute).

MFP also argues that because California law prohibits pen registers that record information "but not the contents of a communication," the law cannot apply to devices that *also* collect contents of a communication. This Court recently considered and rejected that argument in *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1152–55. MFP does not offer any arguments that lead the Court to reach a different conclusion here.

For these reasons, plaintiffs have sufficiently pleaded that the cookies placed on certain users' devices could amount to an unauthorized pen register. Once again, however, the problem with plaintiffs' pen register claim is that they have not alleged that *they* ever communicated with the website. In the absence of any allegation that they communicated with the websites, they cannot allege that the "dialing, routing, addressing, or signaling information" relating to any such communication was unlawfully tracked.

As with plaintiffs' wiretapping claim, MFP's motion to dismiss plaintiffs' pen register claim is granted with leave to amend. Should plaintiffs choose to amend this claim, they must identify not only their communications with MFP but also the specific "dialing, routing, addressing, or signaling information" for outgoing communications that was tracked.

### F. Common law fraud, deceit, and/or misrepresentation

MFP argues that plaintiffs' common law fraud, deceit, or misrepresentation claim should be dismissed because plaintiffs fail to plead that claim with the requisite specificity. Common law fraud in California requires "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (emphasis removed). A state law fraud claim in federal court must also

14

satisfy Federal Rule of Civil Procedure 9(b) by pleading "the who, what, when, where, and how of the misconduct charged." *Id.* at 1124–26 (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2009)). One of the purposes of the specificity required by Rule 9(b) is to "provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Id.* at 1125 (internal quotation marks omitted).[3]

Here, plaintiffs have inadequately pleaded the "when … of the misconduct alleged." *Id.* at 1126. Plaintiffs allege only that they visited MFP's website at some unspecific point in the last four years and that, despite opting out of some cookies, MFP "nonetheless caused cookies and tracking technologies … to be placed on [plaintiffs'] device[s] and/or transmitted to the Third Parties along with user data, without [plaintiffs'] knowledge." This level of generality fails to provide MFP with notice of the misconduct alleged. MFP cannot, for example, determine what specific representations regarding cookies were made on MFP's website on the specific dates that Shah and Wiley visited those websites or how the websites were using any cookies placed on users' devices on those specific dates. *See, e.g.*, *Kearns*, 567 F.3d at 1126 (concluding that the plaintiff had not satisfied Rule 9(b) when he failed to plead "when he was exposed to" the television advertisements at issue or to "specif[y] … when [an allegedly fraudulent] statement was made"). Because plaintiffs' allegations do not satisfy Rule 9(b), MFP's motion to dismiss plaintiffs' common law fraud, deceit, or misrepresentation claim is granted with leave to amend.

### G.   Unjust Enrichment

MFP argues that plaintiffs' unjust enrichment claim fails because unjust enrichment is not a standalone cause of action and because there was no misrepresentation or omission. MFP is

---

[3] As MFP notes, if a party alleges "a unified course of fraudulent conduct and rel[ies] entirely on that court of conduct" as the basis for their claim, the "pleading … as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Contrary to MFP's argument, however, Rule 9(b) does not apply to plaintiffs' "pleading as a whole." *Id.* While plaintiffs' suit is based in part on MFP's allegedly false promise not to enable third parties to track users, none of their claims other than their fraud claim rely "entirely" upon that course of conduct. *Id.* Instead, the other claims focus primarily on privacy-related harms resulting from the information gathering that was enabled by the cookies placed on plaintiffs' devices after they attempted to reject them. The heightened pleading requirements of Rule 9(b) therefore apply only to plaintiffs' common law fraud claim.

15

incorrect as to both arguments. First, while California does not have a standalone cause of action called "unjust enrichment," "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (2015). Second, plaintiffs have plausibly pleaded the existence of a misrepresentation or omission because plaintiffs have alleged that MFP's "representations that consumers could 'opt out of', decline, or reject all cookies, including Functional and Advertising cookies, other than those required for the operation of the Website, while Plaintiff Shah and users browsed the Website, or at least opt out of those cookies involved in providing personalized content, analytics, and advertising were untrue."

A defendant who unjustly enriches themselves "may be required to make restitution." *Hartford Cas. Ins.*, 61 Cal. 4th at 998. "[T]he obligation arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" *Id.* (quoting Restatement (3d), Restitution and Unjust Enrichment, § 1 cmt. b). Plaintiffs allege MFP misled them as to the effect of opting out of certain cookies and that the resulting data collection was valuable because it enabled UMG to better market features and services, better target advertisements, and better profit from its understanding of users' behaviors. Because plaintiffs' have adequately pleaded a cause of action for unjust enrichment, MFP's motion to dismiss that claim is denied.

### H. Trespass to Chattels

Finally, MFP argues that plaintiff has failed to state a claim for trespass to chattels because they have not plausibly alleged damage to their property. Under California law, a defendant commits trespass to chattels when they "intentionally and without authorization interfere[] with plaintiff's possessory interest" and the trespass "proximately resulted in damage" that "impaired the condition, quality, or value of the personal property." *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485 at *7 (citing California state decisions).

Plaintiffs have failed to plausibly allege that MFP "impaired the condition, quality, or value of [their] personal property." Plaintiffs argue that the cookies impaired their devices' by

damaging their security and "by taking up storage space." In *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003), however, the California Supreme Court concluded that trespass-to-chattels plaintiffs must "demonstrate some measurable loss from the use of [their] computer system" and considered relevant whether a defendant caused "any physical or functional harm or disruption." *Id.* at 1357, 1360. Here, plaintiffs have not plausibly alleged physical, functional, or other "measurable loss" from the involuntary placement of cookies on their devices. MFP's motion to dismiss the trespass-to-chattels claim is therefore granted with leave to amend.

## II. Motion to Strike

Federal Rule of Civil Procedure 12(f) allows striking "any redundant, immaterial, impertinent, or scandalous matter." Matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded" and that matter is "impertinent" if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1254, (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1382, at 706–07, 711 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994).

MFP moves to strike "all screenshots incorporated in the Complaint and references to the screenshots…as immaterial and impertinent." Those allegations, however, are not immaterial and impertinent. The screenshots satisfy Rule 12(f) because, if properly authenticated, they show that MFP tracked users despite users opting out of advertising or analytics cookies. While MFP points out that plaintiffs do not say that the undated screenshots in question are from plaintiffs' own devices or experiences, the screenshots could later be verified as consistent with the experiences of plaintiffs or other class members. If so, the screenshots provide an illustration of what happened when plaintiffs attempted to opt out of tracking.

MFP also argues that plaintiffs' class allegations should be stricken because plaintiffs' pleadings are inappropriately broad and untimely. Class allegations can be evaluated at the pleading stage, but their deficiencies should be "plain enough from the pleadings." *See Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). MFP's criticisms of plaintiffs' class pleadings and class definition are not so plain as to warrant striking them at this stage. MFP may raise its

arguments about plaintiffs' proposed class definition at a later stage

Accordingly, MFP's motion to strike is denied in its entirety.

## CONCLUSION

For the above reasons, MyFitnessPal's motion to dismiss is denied in part and granted in part. MFP's motion to dismiss plaintiffs' intrusion upon seclusion, invasion of privacy, and unjust enrichment claims is denied. MFP's motion to dismiss plaintiffs' CIPA wiretapping, pen register, common law fraud, and trespass to chattels claims is granted with leave to amend. Plaintiffs must file any amended complaint within 28 days. Failure to file an amended complaint will result in the dismissal with prejudice of the claims dismissed in this order. MFP's motion to strike is denied.

**IT IS SO ORDERED.**

Dated: January 27, 2026

_____
P. Casey Pitts
United States District Judge