**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Francisco J. Rolon (admitted *pro hac vice*)
francisco@gutridesafier.com
10 Glenlake Parkway, Suite 130
Atlanta, GA 30328
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH and CHRISTINE WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYFITNESSPAL, INC.,<br><br>Defendant. | Case No. 5:25-cv-04430-PCP<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT MYFITNESSPAL, INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT<br><br>Date: May 28, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts<br>Courtroom: San Jose, Courtroom 8 |

TABLE OF CONTENTS

**I. INTRODUCTION** ..... 1

**II. STATEMENT OF FACTS** ..... 2

A. Defendant Falsely Promised Website Users Could Reject Functional and Advertising Cookies ..... 2

B. The Court's Order on Defendant's Motion to Dismiss ..... 3

C. The First Amended Complaint ..... 5

**III. LEGAL STANDARD** ..... 7

**IV. ARGUMENT** ..... 7

A. Plaintiffs Are Not Testers ..... 7

B. Plaintiffs Adequately Plead CIPA, Invasion of Privacy, and Unjust Enrichment Claims Are Not Barred by the Statute of Limitations ..... 7

C. Plaintiffs Properly Allege a Violation of CIPA Section 631(a) ..... 10

a. Plaintiffs have alleged a predicate violation of Section 631(a) ..... 10

b. Plaintiffs Properly Allege "Contents" of Communications ..... 11

c. Plaintiffs Properly Allege Communications were Intercepted "In Transit" ..... 14

**D. Plaintiffs Properly Allege the CIPA Section 638.51 (Pen Register) Claim** ..... 17

a. Plaintiffs Properly the "dialing, routing, addressing, or signaling information" ..... 17

b. Plaintiffs Establish Defendant's Intent ..... 18

c. CIPA is California law, not a proposed bill ..... 19

**E. Plaintiffs Fraud, Deceit, and Misrepresentation Survive** ..... 20

**V. CONCLUSION** ..... 21

TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) ........ 10

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ........ 21

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*,
No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. Dec. 20, 2023) ........ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) ........ 10

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ........ 9

*D'Angelo v. Penny Opco, LLC*,
*No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023) ........ 16

*Doe v. Amgen, Inc.*,
No. 2:23-cv-7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ........ 18, 19

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 12

*Doe v. Fullstory*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 9, 10

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 14

*Esparza v. UAG Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ........ 14, 16

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 9

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 19, 20

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 16

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 11

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 17

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ........ 11, 12, 13

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep.

3, 2024) ..... 19

*Revitch v. New Moosejaw, LLC*, No. 18-cv-06817-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ..... 19

*Rodriguez v. Google LLC, No. 20-cv-04688-RS*, 2022 U.S. Dist. LEXIS 13476 (N.D. Cal. Jan. 25, 2022) ..... 17

*Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal Feb. 13, 2025) ..... 19

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ..... 14, 16

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ..... 14

*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..... 11

**RULES**

Fed. R. Civ. P. 12(b)(6) ..... 7

**STATUTES**

Cal. Penal Code § 631(a) ..... 16

## I. INTRODUCTION

Desperate to escape accountability, Defendant MyFitnessPal's motion is replete with misrepresentations of the plain allegations and California law. This Court previously found that Plaintiffs adequately alleged the intrusion upon seclusion, invasion of privacy, and unjust enrichment claims and granted leave to amend the CIPA wiretapping, CIPA pen register, and fraud claims. The Court held the CIPA wiretapping, CIPA pen register, and fraud claims were deficient because Plaintiffs did not allege their specific interactions on the Website and the specific date of their visit. The First Amended Complaint ("FAC") now contains additional factual allegations detailing Plaintiffs specific interactions and navigation across the Website, including the approximate dates of their visits. This remedies the deficiencies raised by the Court and sufficiently puts Defendant on notice regarding Plaintiffs' claims.

Despite this relatively straightforward task, Defendant takes a kitchen sink approach in its briefing. Defendant repeatedly argues (Dkt. 50 at 3, 7–13) that Plaintiffs failed to allege their specific communications on the Website, but this ignores the plain new allegations describing Plaintiff Shah and Plaintiff Wiley's interactions and navigations on the Website. For example, Plaintiff Shah explains that he sought information regarding Defendant's app and also explored Defendant's blog. FAC ¶¶ 114–15. And Plaintiff Wiley explains that she began to sign up for an account (but did not complete the process) with Defendant and input specific information into website forms. FAC ¶ 126. Defendant also argues the CIPA and unjust enrichment claims are barred by the statute of limitations. However, as this Court held, dismissal is only appropriate if a plaintiff pleads themselves out of a claim by providing "all the ingredients of an impenetrable defense." Here, the discovery rule applies because Plaintiffs have alleged they did not know how the Website was programmed and discovering their claims requires specialized developer training.

Defendant next asserts that Plaintiffs failed to allege a predicate violation of Section 631(a), but this again ignores Plaintiffs' allegations. As before, Plaintiffs have alleged various Third Parties (including, Google, Meta Platforms, Amazon, TikTok, and more) intercepted data, including user input data (FAC ¶ 126) and contents in URLs (FAC ¶¶ 114–15) from Plaintiffs'

interactions with the Website despite their rejection of non-required cookies. Defendant next ignores swaths of the FAC to argue Plaintiffs fail to allege any facts showing the communications were intercepted in transit or the addressing or signaling information related to such communications. Yet, the FAC contains entire sections dedicated to explaining these exact facts. *See* FAC ¶¶ 88–97 ("The Third Parties Intercept User Communications While In Transit"); *id.* ¶¶ 98–101 ("The Signaling and Addressing Information Intercepted by the Third Parties"). Finally, Defendant claims Plaintiffs must establish Defendant's knowledge and intent to illegally collect Plaintiffs' information, but CIPA only requires intent which is established by alleging Defendant enabled the Third Parties to intercept their communications with the Website, as Plaintiffs do here. Based on the foregoing the Court should fully deny the motion to dismiss.

## II. STATEMENT OF FACTS

### A. Defendant Falsely Promised Website Users Could Reject Functional and Advertising Cookies

On May 23, 2025, Plaintiffs filed the initial class action complaint against Defendant. Dkt. 1. Plaintiffs allege that when consumers visit Defendant's website (www.myfitnesspal.com, the "Website"), Defendant displays to them a popup cookie consent banner in which it offers Website users the option to control how they are tracked and how their personal data is used. The following screenshot is the popup cookie consent banner displayed to users of the Website:




Dkt. 47 ("FAC") ¶ 1. The cookie consent banner stated, "We use first and third party cookies to make our site work (Required Cookies), for analytics (Functional Cookies), and to personalize content and ads (Advertising Cookies). You may opt out of the use of certain cookies <u>here</u>[.]" The word "<u>here</u>" was a hyperlink which users could click to open the "Your Choices Regarding Cookies on this Site" window. *Id.* ¶¶ 35–36. Defendant's Your Choices window states that users can "choose whether this site may use Functional and/or Advertising cookies" and "featured toggle switches that users could adjust to opt out of, decline, or otherwise reject such cookies[.]" *Id.* ¶ 36. Defendant was clear on the types of cookies which could be rejected for Functional and

Advertising cookies because it specifically listed each cookie which users could decline or opt out of under each category. *See id.* ¶¶ 32–33 (identifying, among others, Facebook, Google, and Amazon as third party Functional and Advertising cookies).

Despite its specific and repeated representations that it would not use cookies or share user information with third parties if users adjusted all available cookie settings to opt out of, decline, or reject all categories of non-required cookies, including Functional and Advertising cookies, Defendant nonetheless caused the installation of cookies from the very third parties Defendant represented Website users could opt out of—including Google LLC (DoubleClick and Google Analytics cookies), Meta Platforms, Inc. (Facebook cookies), Amazon.com, Inc. (Amazon cookies), TikTok Inc. (TikTok cookies), and more (collectively, the "Third Parties"). Dkt. 47 ¶¶ 41–42. Defendant thereby caused the collection and dissemination of users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more (collectively "Private Communications"). *Id.* ¶ 26; *see id.* ¶¶ 24, 38. This resulted in not only the disclosure of Website users' computer data such as IP and email addresses; but specific user communications, including Plaintiffs, such as search queries and search strings made on the Websites. *Id.* ¶¶ 24, 26. The Third Parties use the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 25, 46–79. This is the exact type of tracking and data sharing that Plaintiffs and other Website users sought to avoid when they opted out of and declined such cookies.

**B. The Court's Order on Defendant's Motion to Dismiss**

On July 11, 2025, Defendant moved to dismiss and strike the class action complaint arguing, *inter alia*, that: (1) Plaintiffs did not plead an injury in fact because they "do not—and cannot—claim that any of their specific information" was collected; (2) Plaintiffs failed to sufficiently plead the fraud claims because there were "virtually no factual allegations regarding Plaintiffs' experiences"; (3) Plaintiffs had no reasonable expectation of privacy; (4) Defendant's collection and disclosure of data after promising users it would not do so is not highly offensive;

(5) Plaintiffs' claims are barred by the statute of limitations; (6) Plaintiffs failed to allege the communications were intercepted while in transit; (7) Plaintiffs failed to allege "contents" were intercepted; (8) Plaintiffs failed to plead a violation of the first or second clauses under CIPA; and (9) CIPA does not extend to online cookie tracking technology. *See* Dkt. 12. Plaintiffs filed its opposition on August 14 and Defendant filed its reply on August 29. Dkt. 15, 28.

On January 27, 2026, this Court issued its order denying in part and granting in part Defendant's motion to dismiss. Dkt. 44. The Court denied the motion as to the intrusion upon seclusion, invasion of privacy, and unjust enrichment claims. *Id.* at 18. The Court held that (1) Plaintiffs adequately pled injury in fact "because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law"; (2) the "claims cannot be dismissed as untimely" because "plaintiffs' complaint d[id] not admit the ingredients of an impenetrable statute of limitations defense"; (3) Plaintiffs adequately alleged a reasonable expectation of privacy because "MFP allegedly told plaintiffs that it would not collect information for advertising or analytics if they opted out of such collection"; (4) Plaintiffs pled sufficient facts to show MFP's invasion was "'highly offensive,' especially given the information's potentially sensitive nature"; and (5) Plaintiffs adequately alleged the unjust enrichment claim because "Plaintiffs allege MFP misled them as to the effect of opting out of certain cookies and that the resulting data collection was valuable because it enabled [MFP] to better market features and services, better target advertisements, and better profit from its understanding of users' behaviors." *Id.* at 4–6, 15–16.

The Court dismissed, with leave to amend, the CIPA wiretapping, CIPA pen register, common law fraud, and trespass to chattels. Dkt. 44 at 18. For the CIPA wiretapping claim, the Court held that Plaintiffs sufficiently alleged "contents" by alleging the "tracking also included 'website interactions,' 'user input data,' 'shopping behaviors,' and 'referring URLs.'" *Id.* at 11. However, the Court held the CIPA wiretapping claim was deficient because Plaintiffs did not "specifically allege that their communications were intercepted by any third parties." *Id.* at 12. For the CIPA pen register claim, the Court held CIPA was not limited to telephones, but Plaintiffs

failed to allege their communications on the Website and the related "dialing, routing, addressing, or signaling information." *Id.* at 12–14. For the fraud claim, the Court held that Plaintiffs failed to adequately plead the "when" because "Plaintiffs only alleged that they visited MFP's website at some unspecific point in the last four years." *Id.* at 14–15. The Court further denied the motion to strike in its entirety. *Id.* at 17–18.

**C. The First Amended Complaint**

On February 24, 2026, Plaintiffs filed the FAC, addressing the deficiencies identified by the Court. Dkt. 47.[1] For the CIPA wiretapping claim, the FAC contains new detailed allegations describing Plaintiffs interactions and communications on the Website which were then transmitted to Third Parties. *Id.* ¶¶ 114–115, 126. Plaintiff Shah visited the Website in or around February 2023 to read about the MyFitnessPal mobile application and this Website visit was transmitted to the Third Parties which gave them valuable information regarding "his interest in health applications." *Id.* ¶¶ 108, 114. "Plaintiff Shah also navigated to the 'MyFitnessPal blog' on the Website . . . clicked on the 'Recipes' button which navigated him to the 'Meal Planning & Recipes' webpage." *Id.* ¶ 115. These interactions and communications were similarly transmitted to Third Parties. *Id.* Plaintiff Wiley visited the Website in or around January 2023 and proceeded through several pages of the sign up process, inputting her name and gender, and clicked certain buttons expressing her health goal to "lose weight." *Id.* ¶¶ 120, 126. Plaintiff Wiley's interest in health applications, name, gender, and her interest in losing weight was similarly transmitted to the Third Parties giving them valuable insights and sensitive health related information. *Id.* Plaintiffs communications "were transmitted to Third Parties together with [their] user agent information [], IP address [], specific cookie identifiers [], and other associated metadata []" despite their rejection of all non-essential cookies. *Id.* ¶¶ 114, 126.

The FAC also contains additional factual allegations detailing how the third parties intercept user communications while "in transit." Dkt. 47 ¶¶ 88–97. The FAC explains that the Third Parties intercept user communications in transit because it "must read the data in real time in order to transform it into a usable format for subsequent processing." *Id.* ¶ 89. The Third

[1] Originally filed at Dkt. 45, corrected at Dkt. 47.

Parties must also "read the data in real time in order to deduplicate events transmitted through multiple channels." *Id.* ¶ 90. The Third Parties "read and analyze incoming communications in real time to validate and filter the data, including to detect invalid, malicious, or anomalous transmissions and to determine whether the data complies with internal processing rules." *Id.* ¶ 91. The Third Parties also "perform real-time analytics on user communications to determine their meaning and significance." *Id.* ¶ 92. The FAC further details how the Third Parties "employ real-time stream processing platforms specifically designed to operate on data 'in flight'—that is, after it is transmitted from a user's browser but before it is committed to Third Parties' storage." *Id.* ¶ 93; *see id.* ¶ 96. By way of example, the FAC details Meta's "real-time stream processing platform that ingests data transmitted from users' devices and websites, applies real-time transformations and personalization, and only thereafter stores the data in backend data warehouses, as illustrated in the following diagram created by Facebook." *Id.* ¶ 94; *see id.* ¶ 95. "Accordingly, the Third Parties' platforms do not operate as passive recipients that merely record user communications. Instead, they function as active interceptors that contemporaneously read and process the contents of user communications." *Id.* ¶ 97.

Finally, the FAC contains additional allegations regarding the signaling and addressing information intercepted by the Third Parties. ECF 47 ¶¶ 98–101. "The 'signaling' and 'addressing' information captured and recorded by the Third Parties includes TCP and/or UDP port numbers associated with outgoing communications initiated by Plaintiffs' and Class Members' browsers and devices." *Id.* ¶ 98. These port numbers allow the Third Parties to "identify and distinguish specific network connections and the communicating endpoints involved." *Id.* The "signaling" information "also includes protocol-level metadata recorded by the Third Parties during connection establishment and session management, such as the initiation and acceptance of TCP connections and the TLS handshake and negotiation metadata used to establish HTTPS sessions." *Id.* ¶ 99. The Third Parties also "record HTTP request header metadata, such as the 'Host' header and connection-management headers (e.g., 'Connection' in HTTP/1.1), which function as digital 'dialing' information." *Id.* ¶ 100. Finally, "the Third Parties' receiving infrastructure (e.g., servers, edge services, and/or load balancers) observes and records

network-level and transport-level routing and addressing metadata associated with communications initiated by Plaintiffs' and Website users' browsers and devices." *Id.* ¶ 101. "This metadata includes destination IP addresses, port identifiers (such as 443 for HTTPS), and related connection and session attributes, including connection initiation and termination timestamps, connection duration, and identifiers such as the protocol used (TCP or UDP), the source IP address, the source port, the destination IP address, and the destination port." *Id.*

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiffs Are Not Testers

With no basis in fact, Defendant asserts that "Plaintiffs Vishal Shah and Christine Wiley [] are testers who browse public websites ***solely*** to threaten to file putative privacy class actions based on novel and untested theories of liability." Dkt. 50 at 2 (emphasis supplied). Defendant either failed to read Plaintiffs plain allegations or seeks to mislead the Court. Plaintiffs specifically allege they are not a "consumer advocate, a 'tester,' or a compliance auditor that visited the Website to test or evaluate Defendant's privacy practices." FAC ¶¶ 109, 121. These same allegations were present in Plaintiffs' initial complaint. *See* Dkt. 1 ¶¶ 87, 97. The fact that Plaintiffs are involved in other data privacy lawsuits merely shows that Plaintiffs consistently opt to protect their privacy in the face of widespread data privacy violations.

### B. Plaintiffs Adequately Plead CIPA, Invasion of Privacy, and Unjust Enrichment Claims Are Not Barred by the Statute of Limitations

This Court previously rejected Defendant's argument that Plaintiffs' claims were barred by the statute of limitations, but required more specificity with regards to Plaintiffs' visit dates

for their fraud claims. Dkt. 44 at 5 (statute of limitations), 15 (fraud claims). The Court noted that the statute of limitations is an affirmative defense and only provides a basis to dismiss if "the plaintiffs have pleaded themselves out of a claim by 'admit[ting] all the ingredients of an impenetrable defense[.]" *Id.* The Court found that the "applicable statute of limitations ranges are two years for the invasion-of-privacy and intrusion-upon-seclusion claims, . . . one year for the CIPA wiretapping and pen register claims, . . . and three years for the fraud and trespass-to-chattels claims[.]" *Id.* Given that Plaintiffs had alleged they visited within the last four years, the Court held the claims as timely.

The FAC now contains additional allegations regarding the dates Plaintiffs visited the Website. FAC ¶ 108 (Plaintiff Shah visited the Website "on one or more occasions during the last four years, including in or around February 2023"); *id.* ¶ 120 (Plaintiff Wiley visited the Website "on one or more occasions during the last four years, including in or around January 2023"). Plaintiffs added specificity regarding their visit dates to address Rule 9(b). In doing so, Plaintiffs added allegations that some of their visits to the Websites, but not all, predated the filing of their complaint by more than one year. Plaintiffs both still allege that they visited the Websites "on multiple occasions during the last four years," which this Court previously found prevented Defendant's affirmative defense because "[t]he 'last four years' includes the past one, two, or three years, so it is entirely possible, from the face of the complaint, that plaintiffs' claims are timely." Dkt. 44 at 6.

Defendant argues "every instance of purported misconduct underlying their CIPA claims—including their interactions with the cookie banner on these websites . . ., and the newly added allegations regarding reading about MFP's app, its meal planning and recipes, and partial sign-up process []—last occurred in or around January or February 2023." Dkt. 50 at 5–6. However, this misstates the allegations. Plaintiffs amended their allegations regarding their Website activity to address this Court's conclusion that the original complaint failed to include allegations that "*they* ever communicated with the website." *See*, *e.g.*, Dkt. 44 at 14 (emphasis in original). Those amendments include details about their interactions with the Websites (FAC ¶¶ 114–15, 126) which are not limited in time. Indeed, they visited multiple times over the course of four years and the

amendments also include that their interactions included communications and record information that were transmitted and intercepted in real time. *See*, *e.g.*, FAC ¶¶ 98–101 (describing information that is transmitted "by Plaintiffs and Class Members" and intercepted by Third Parties). As this Court held, dismissal is only appropriate when "plaintiffs' pleaded facts demonstrate no 'potential factual dispute that could affect whether the defense applies[.]" Dkt. 44 at 5–6. Here, the plain allegations do not create an "impenetrable defense." *Id.* at 5.

Because Plaintiffs are not required to anticipate Defendant's affirmative defense, they did not include allegations that they did not discover the basis for their claims until January 2025. But even without this allegation, Plaintiffs' allegations still support application of the discovery rule and fraudulent concealment doctrine to toll CIPA's one-year statute of limitations. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *40 (C.D. Cal. Dec. 20, 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)). And, as Defendant notes, Plaintiffs must plead facts showing only "the *potential* applicability of the equitable tolling doctrine." Dkt. 50 at 6 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993) (emphasis supplied)).

Here, Plaintiffs allege they do not know how the Website is programmed and determining whether Defendant is still placing unauthorized cookies and transmitting data to third parties requires specialized software developer training. ECF 47 ¶ 119 ("The only way to determine what network traffic is sent to third parties when visiting a website is to use a specialized tool such as Chrome Developer Tools . . . [and] such tools are designed for use by 'developers' (i.e., software developers), whose specialized training enables them to analyze the data underlying the HTTP traffic to determine what data, if any, is being sent to whom."); *id.* ¶ 130 (same for Plaintiff Wiley). Thus, they could not have discovered the violation at the time of their visit, and Plaintiffs' claims should be tolled. *See Doe v. Fullstory*, 712 F. Supp. 3d 1244, 1255–56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not

discover the violation at all). Similarly, these allegations are sufficient to allege tolling for various prospective class members under the delayed discovery rule, as they may be unable to the discover their claims earlier, despite reasonable diligence. *See B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970, at *11 (C.D. Cal. Feb. 1, 2024) (holding that a delayed discovery argument posed a "barrier to dismissal" when the plaintiff alleged that the defendants secretly incorporated Pixels into their web properties and patient portals).

Separately, fraudulent concealment tolls Plaintiffs' claims when "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1070 (C.D. Cal. March 12, 2021) (internal quotation marks and citation omitted). Plaintiffs demonstrate these requirements because they allege Defendant affirmatively misrepresented to Website visitors that users could reject cookies and tracking technologies. *See*, *e.g*., FAC ¶ 195 ("These misrepresentations and omissions were known exclusively to, and actively concealed by Defendant"). Plaintiffs also plead that they did not have actual or constructive knowledge of the facts giving rise to their claims. *Id.* ¶¶ 119, 130. Because of this affirmative misrepresentation, and Plaintiffs' lack of technical expertise, Plaintiff acted diligently in bringing this action after learning of Defendant's privacy violations in 2025. *Id*. Indeed, Plaintiffs' invocation of the fraudulent concealment doctrine is *stronger* than it was in *Fullstory*. Here, unlike in *Fullstory*, Plaintiffs have "allege[d] facts with respect to . . . the source of [Defendant's] fraudulent concealment;" namely, the affirmative misrepresentation that website users could opt out of cookies and tracking technologies. *See Fullstory*, 712 F. Supp. 3d at 1256. As such, Defendant's fraudulent concealment tolled the statute of limitations.

### C. Plaintiffs Properly Allege a Violation of CIPA Section 631(a)

#### a. Plaintiffs have alleged a predicate violation of Section 631(a)

Defendant argues the CIPA claims fail because "Plaintiffs must first plausibly allege that a third party committed a predicate violation of one of the first three clauses." Dkt. 50 at 7. But

Defendant places form over function. While not laid out in a single element-by-element analysis, the FAC clearly alleges CIPA violations by at least the Third Parties named in the FAC. *See* Dkt. 47 ¶¶ 2–6, 36–87 (identifying unconsented wiretapping via cookies placed by Meta Platforms, Google, TikTok, Amazon, "and more"); *see also id.* at ¶¶ 36–38, 40, 42–44, 111, 123 (Third parties made an intentional tap or unauthorized connection); ¶¶ 36–38, 40, 44, 46–47, 52–53, 60–62, 73–74, 83–87 (with any line, cable, or instrument—i.e., cookies in internet communications); ¶¶ 28–38 (willfully and without consent of all parties); ¶¶ 88–97 (reads or learns the contents of any communication while in transit); ¶¶ 57, 71, 81–82, 84–87 (uses any information so obtained).

**b. Plaintiffs Properly Allege "Contents" of Communications**

CIPA prohibits interception of "contents" communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). The distinction between "contents" and "record information" is largely in how the information is generated: "record information regarding the characteristics of the message that is generated in the course of the communication" is not included in the definition of "contents." *Id*. at 1106; *In re Carrier IQ, Inc., Consumer Privacy Litig*., 78 F. Supp. 3d 1051, 1082 (N.D. Cal. 2015). However, information that would otherwise constitute record information can become content when it is the information the user communicates, rather than information automatically generated by a web browser. *In re Zynga Privacy Litig*., 750 F.3d at 1107.

The Court previously held that Plaintiffs sufficiently alleged "contents" when they alleged that the Third Parties intercepted, among other things, "'website interactions,' 'user input data,' 'shopping behaviors,' and 'referring URLs.'" Dkt. 44 at 11. However, the Court also held the claim was deficient because Plaintiffs "do not specifically allege that their communications were intercepted by any third parties." *Id.* The FAC now contains detailed factual allegations

regarding Plaintiffs website interactions, user inputs, and shopping behavior. For example, Plaintiff Wiley visited the Website and proceeded through several pages of the sign up process, inputting her name and gender, and clicked buttons expressing her health goal to "lose weight." *Id.* ¶ 126. These interactions and webpages were transmitted to the Third Parties despite Plaintiffs rejection of non-essential cookies. FAC ¶¶ 124, 126. Thus, Plaintiffs have sufficiently alleged the contents of the communications. *See In re Zynga Privacy Litig.*, 750 F.3d at 1107 (name, address, gender, etc. were contents of communications where user entered the information on the website).

Similarly, Plaintiff Shah alleges he visited the Website to read about Defendant's health application and Defendant allowed this website visit and Plaintiff Shah's interest in health applications to be intercepted and transmitted to the Third Parties. FAC ¶ 114. Plaintiff Shah also "navigated to the 'MyFitnessPal blog' on the Website . . . clicked on the 'Recipes' button which navigated him to the 'Meal Planning & Recipes' webpage." *Id.* ¶ 115. The data that Defendant caused to be intercepted by Third Parties was information that conveyed, among other things, "what [Plaintiffs] were searching for or what they wanted to do on MFP's website," and thus "reveal[ed] the 'contents' of [Plaintiffs'] communications with MFP's website." Dkt. 44 at 12 (citing *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 11 (N.D. Cal. 2025) (concluding that data suffices as content under CIPA § 631 when it "conveys far more than basic identification and address information")).

Defendant's attempt to rebut these allegations are frivolous and each sentence is a blatant misstatement of the FAC. Defendant repeatedly categorizes Plaintiff Shah's allegations as "undefined" or "unspecified" "button clicks" that "do not come close" to conveying an "intended message." Dkt. 50 at 8–9. The FAC states that Plaintiff Shah visited the Website, among other things, to research the MFP mobile application. FAC ¶ 114. Plaintiffs allege that Defendant's "primary product is a smartphone application and website of the same name designed to help users track their calorie intake, exercise, and overall health and fitness goals." FAC ¶ 27. Indeed, Defendant admits that "MFP is a premier nutrition and fitness tracking application," (Dkt. 50 at 8) so its conclusion that the allegations are a "far cry" from conveying that the user was

"searching for an app that specializes in such categories" is untenable. *Id*. Further, contrary to the "unspecified button clicks" that Defendant suggests, Plaintiff Shah alleges he "clicked on the 'Recipes' button which navigated him to the "Meal Planning & Recipes" (FAC ¶ 115) webpage in his visit to seek "information about Defendant's products and services." (FAC ¶ 109). This Court previously explained that "[t]his information could convey, among other things, what users were searching for or what they wanted to do on MFP's website" and "would likely entail queries or clicks from users revealing the 'contents' of users' communications with MFP's website." *Id.* at 12. Here, Plaintiffs' visits to the Websites and navigation to several pages relating to recipes for cooking and dietary planning includes the "substance, purport, or meaning of a communication." Thus, that "MFP allegedly tracked users in interactions relating to their health [] supports the conclusion that MFP was tracking the 'contents' of users' communications and not merely record information." Dkt. 44 at 12. For this same reason, Defendant's argument that "the FAC lacks keys facts about Plaintiffs' actual interactions" also fails. Dkt. 50 at 8. Thus, the data intercepted by Third Parties during Plaintiff Shah's visits to the Website provides the Third Parties with valuable insights into Plaintiff's behaviors and interest in health related applications. Defendant's arguments to the contrary are meritless.

Defendant further claims that Plaintiff Wiley "only entered her name . . . and clicked on buttons for her gender and health goals on the MFP Website." Dkt. 50 at 9. This argument ignores the definition of "contents." In *In re Zynga*, the Ninth Circuit explained that the distinction between "record information" and "contents" includes how the information is generated. *In re Zynga*, 750 F.3d at 1107. The Court explained that "sign-up information" that included the name, address, telephone number, and email addresses which may otherwise be considered record information became contents because it was entered by the website users. *Id*. Here too, Plaintiff Wiley input information into the sign-up form including her name and gender. FAC ¶ 126. Plaintiff Wiley alleges that "these communications were transmitted to Third Parties." *Id*. Thus, the contents of her communications were intercepted. Furthermore, Plaintiff Wiley alleged that she clicked a button on the website to try the MFP application. *Id*. She also clicked a button indicating one of her health goals was to "lose weight." FAC ¶ 126. As this Court held, button

clicks which transmit sensitive information such as health goals, can be considered "contents" of communications because Defendant "allegedly tracked users in interactions relating to their health." Dkt. 44 at 12. Even so, Defendant concedes that certain categories of data collected on the Website qualify as "record information" for Plaintiffs CIPA pen register claims. Dkt. 50 at 9 ("A person's name is considered 'record information'"). But it is clear that Plaintiff Wiley's selection of her health goal to "lose weight" constitutes "contents" because it includes the "substance, purport, or meaning of a communication." Thus, the Court should reject any arguments to dismiss the CIPA claims.

**D. Plaintiffs Properly Allege Communications were Intercepted "In Transit"**

Plaintiffs must allege that "the interception" occurs "contemporaneous with the sending or receipt of the message." *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Courts find simultaneous duplication and interception of communications sufficient to meet the "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Here, Plaintiffs have alleged the interception occurs "contemporaneous[ly]" and that the "Third Parties operate large-scale data ingestion systems designed to receive, read, and act upon incoming data streams in real time, as the data is transmitted over the network, before it is committed to storage." FAC ¶ 88; *id.* ¶¶ 88–97; *Keurig Green Mt.*, 674 F. Supp. 3d at 758–59 (holding that a plaintiff's allegations must explain "how" communications are intercepted in transit); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiffs have alleged that their communications were tapped "in transit" sufficient to sustain their CIPA claims. *See, e.g., St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *17 (N.D. Cal. Oct. 1, 2024).

Moreover, the FAC contains an entire new section title "The Third Parties Intercept User Communications While In Transit" explaining how the Third Parties "require contemporaneous

access to the contents of the communications while they are in transit." FAC ¶ 88; *id.* ¶¶ 88–97. The FAC explains the various ways in which the Third Parties transform, deduplicate, validate, filter, and analyze the raw data from the Website with real-time stream processing platforms. *Id.* ¶¶ 89–93. The FAC provides examples of the real-time stream processing platforms used by Meta and Google. *Id.* ¶¶ 95–96. Both Meta and Google are Third Parties which are shown in Plaintiffs' FAC as receiving data despite a Website user's rejection of non-required cookies. *Id.* ¶ 43 (screenshots showing various cookies sent to the domains: www.facebook.com, www.google.com, analytics.google.com, td.doubleclick.net, googleads.g.doubleclick.net, www.google-analytics.com, among others). The FAC further explains that the Third Parties are "active interceptors" of communications that are "in transit between the user's browser and Defendant's Website." FAC ¶ 97.

These allegations demonstrate how the cookies placed on Plaintiffs' and other users' devices operated as a real time listening device—intercepting and reading their private communications, which were meant only to be between Plaintiffs' and Defendant—and contemporaneously reading and processing them. *See*, *e.g*., FAC ¶ 45 ("Plaintiffs' and other Website users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, were surreptitiously obtained by the Third Parties via these cookies."); *id.* ¶ 116 ("Defendant nonetheless caused cookies and tracking technologies, including those used for personalized content, advertising, and analytics, to be placed on Plaintiff Shah's device and/or transmitted to the Third Parties along with user data, without Plaintiff Shah's knowledge"); *id.* ¶ 127 ("Defendant nonetheless caused cookies and tracking technologies, including those used for personalized content, advertising, and analytics, to be placed on Plaintiff Wiley's device and/or transmitted to the Third Parties along with user data, without her knowledge."). This is more than sufficient.

Plaintiffs' wiretapping claims under CIPA § 631(a) survive because Plaintiffs' "allegations that [communications] are intercepted in real time through the use of computer code

provides sufficient factual detail to support the 'in transit' requirement" at the pleadings phase. *Esparza*, 2024 U.S. Dist. LEXIS 24429, at *3. Ruling otherwise would require Plaintiffs to prove their case before discovery. *D'Angelo v. Penny Opco, LLC,* No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023); *see also St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15 ("A pleading standard [requiring explanation of how and when interception occurs] would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder."); *see also In re Carrier IQ*, 78 F. Supp. 3d at 1077 (describing case law and explaining where defendant received communications during the "transmission process," the communications were received contemporaneously).

Defendant's arguments to the contrary rely on a selective reading of the FAC and semantic slight-of-hand. Defendant argues that Plaintiffs fail to allege their "***own interactions*** with the MFP Website were intercepted by any third parties." Dkt. 50 at 10. Preliminarily, the FAC sets the stage that Plaintiffs' interactions with the Website are subject to the new "in transit" allegations. Plaintiffs allege that despite rejection of cookies, Defendant caused cookies "including the Third Parties' cookies, to be sent to Plaintiffs and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data." FAC ¶ 4. The FAC then explains that Plaintiffs were users of the Website that declined cookies and explains the details of their interactions with the Website. *See*, *e.g.*, FAC ¶¶ 36–42, 114–15, 126. The FAC also explains the operations of the Websites and Third Parties as it applies to all Website users, including Plaintiffs.

Defendant next argues Plaintiffs "still fail to allege any facts showing that those communications were intercepted while in transit" and Plaintiffs failed to "plead facts explaining how any such real-time interception occurred" or "provid[e] allegations of whether Plaintiffs' own communications were intercepted." Dkt. 50 at 10. But to do so, Defendant completely ignores large swaths of the FAC described above and instead only highlights one example provided of how a user input into a search bar is also intercepted by Third Parties and qualifies as contents of communications. *See* Dkt. 50 at 10 (citing FAC ¶¶ 48–51). Far from "boilerplate"

or "conclusory" allegations, the allegations described herein provide explicit detail of how the communications are intercepted by Third Parties. *See* FAC ¶¶ 48–51 (Comscore cookies); *id.* ¶¶ 52–59 (Facebook cookies with button clicks, URLs, preference data, and more); *id.* ¶¶ 60–72 (Google cookies with button clicks, URLs, preference data, and more); *id.* ¶¶ 73–82 (TikTok cookies with user interactions and other data); *id.* ¶¶ 83–87 (other third parties who intercept communications). Thus, none of Defendant's cited cases are applicable here. *Cf. Rodriguez v. Google LLC, No. 20-cv-04688-RS*, 2022 U.S. Dist. LEXIS 13476, at *10–11 (N.D. Cal. Jan. 25, 2022) ("in transit" allegations insufficient where complaint used the word "intercept" up to 86 times in the complaint without explanation of *how* the interception occurred); *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (allegations that included "inscrutable graphic with no textual explanation" that suggested that Defendant transmitted data after receipt did not adequately plead interception). Similarly, the new allegations explain in detail that Third Parties intercept the data, including Plaintiffs' data, to read, process, analyze, and transform it in real time. FAC ¶¶ 88–97. Thus, unlike Defendant's cited cases, the Third Parties here are doing far more than simply storing or recording it. *See* Dkt. 50 at 10–11.

### E. Plaintiffs Properly Allege the CIPA Section 638.51 (Pen Register) Claim

#### a. Plaintiffs Properly the "dialing, routing, addressing, or signaling information"

This Court previously dismissed the Pen Register claim with leave to amend holding "the problem with plaintiffs' pen register claim is that they have not alleged that *they* ever communicated with the website. In the absence of any allegation that they communicated with the websites, they cannot allege that the 'dialing, routing, addressing, or signaling information' relating to any such communication was unlawfully tracked." Dkt. 44 at 14. The FAC now provides additional details regarding Plaintiffs communications on the Website. FAC ¶¶ 114–115, 126. The FAC also details the addressing and signaling information the Third Parties collected with Plaintiffs' communications. *Id.* ¶¶ 98–101 (describing data associated with "Plaintiffs' and Website users' browsers and devices"). The "signaling" information "includes protocol-level metadata recorded by the Third Parties during connection establishment and session management, such as the initiation and acceptance of TCP connections and the TLS

handshake and negotiation metadata used to establish HTTPS sessions." *Id.* ¶ 99. "Because this metadata enables management of the connection rather than the substance of the message, it constitutes record information regarding the characteristics of the communication, rather than communication content, and falls squarely within the statutory definition of pen register." *Id.* The Third Parties also receive addressing metadata which "includes destination IP addresses, port identifiers (such as 443 for HTTPS), and related connection and session attributes, including connection initiation and termination timestamps, connection duration, and identifiers such as the protocol used (TCP or UDP), the source IP address, the source port, the destination IP address, and the destination port." *Id.* ¶ 101. Thus, the Court should reject Defendant's challenge to Plaintiffs' communications with the Website and the specific dialing, routing, addressing, or signaling information regarding those communications. Dkt. 50 at 11 ("in the absence of any allegations that they personally communicated with the Websites, Plaintiffs cannot allege what 'specific dialing, routing, addressing, or signaling information for outgoing communications that was tracked.'").

**b. Plaintiffs Establish Defendant's Intent**

Defendant argues that "because CIPA is a criminal statute, Plaintiff [sic] must establish scienter" and "must allege . . . that MFP installed the third-party cookies and corresponding source code with knowledge and intent that the cookies would misfire and/or illegally collect information about Plaintiffs." Dkt. 50 at 11. However, Courts from this Circuit consistently hold that only intent needs to be satisfied and it can be done by pleading that Defendant intentionally (i.e., not accidentally) "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23-cv-7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06817-VC, 2019 U.S. Dist. LEXIS 186955, at *4 (N.D. Cal. Oct. 23, 2019)("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of specific intent, courts routinely find privacy

allegations sufficient when plaintiff alleges that defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5. The intent requirement in the analogous Wiretap Act is also instructive. "The Ninth Circuit has rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires 'an intentional act, defined as an act that is being done on purpose.'" *Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal Feb. 13, 2025).

Here, Plaintiffs allege that Defendant fraudulently misrepresented to Website users that they could reject non-required cookies (FAC ¶¶ 1, 36–39, 110, 122), including functional and advertising cookies, but it nonetheless allowed Third Parties to intercept user communications (*id.* ¶¶ 40–44, 48–87) and Defendant (not the Third Parties) installed the code on the Website which enabled such interception (*id.* ¶¶ 2, 21, 28–31, 195). As this Court previously held, "[a] reasonable visitor to MFP's website who chose to opt out of optional cookies would thus reasonably expect MFP not to install such cookies on their devices" and "MFP's alleged affirmative misrepresentation distinguishes this action." Dkt. 44 at 7. It is telling that Defendant's privacy violations continue to this day despite this ongoing litigation.

**c. CIPA is California law, not a proposed bill**

Defendant next argues "the California legislature never intended for California Penal Code section 638 to apply to the website tracking tools at issue." Dkt. 50 at 12. However, this Court considered and rejected this argument in its previous order. The Court held the "text of the statute . . . contains no such limitation [to telephones], even though other sections of CIPA are expressly so limited." Dkt. 44 at 13 (citing *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025)). The Court further rejected that the legislative history provided any support because "if California sought to limit pen register claims to telephones, it knew how to do so (and in fact did so in other sections of the statute)." *Id.* at 14. Moreover, Defendant's citation to a statement by Democratic Senator Anna Caballero from a July 1, 2025 assembly meeting is not conclusive as she also stated in that same session that "[t]he change would have created a rebuttable presumption in CIPA that would be overcome through proof of

harm [and] there are outstanding concerns surrounding consumer privacy, which is why I ask that the Bill move forward today, and I intend to make it a two-year Bill in the Assembly Privacy and Consumer Protection Committee."[2] Thus, Defendant's cherry-picked quotes cannot save it.

**F. Plaintiffs Fraud, Deceit, and Misrepresentation Survive**

Plaintiffs have pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. Plaintiffs allege that Defendant (who), allowed the Third Parties to collect Website users' Private Communications despite promising they could opt out of or decline functional and advertising cookies (what), when Plaintiffs visited Defendant's Website in or around January and February 2023 and clicked toggled off their cookie settings (when and where), and by integrating its Website with Third Party resources, including cookies that were stored on users' devices that transmit personal information about the users (how). *See, e.g.*, Dkt. 47 ¶¶ 1–6, 32, 36–47, 192–203 (alleging fraud); *id.* ¶¶ 18–35, 185, 189, 195 (alleging intentional conduct); *id.* ¶¶ 110–113, 117, 122–125, 128, 200 (alleging reliance); *id.* ¶¶ 148–150, 158–160, 179, 197, 201–203 (alleging injury). This is clearly sufficient. *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *38 (finding plaintiffs identified the who, what, when, where and how of the misconduct).

The Court previously held that Plaintiffs' "inadequately pleaded the 'when . . . of the misconduct alleged'" for the fraud claims because they "allege only that they visited the MFP's website at some unspecific point in the last four years" and such generality did not allow Defendant to "determine what specific representations regarding cookies were made on MFP's website on the specific dates that Shah and Wiley visited those websites or how the websites were using any cookies placed on users' devices on those specific dates." Dkt. 44 at 15. The FAC now contains additional allegations regarding Plaintiffs communications on the Website, including the approximate time frame they last visited. FAC ¶¶ 108, 114–115, 126. Defendant has not argued that it cannot determine the Website cookie banners or that the Website cookies

[2] Bill SB690, Assembly Standing Committee on Public Safety, July 1, 2025, available at https://calmatters.digitaldemocracy.org/hearings/259504#t=790&f=2917ade7aef4ad51bb62e962e8299862.

were not being used at the time Plaintiffs visited the Website. The Court should therefore reject Defendant's argument that "there are virtually no factual allegations regarding Plaintiffs' experiences on the MFP Website." Dkt. 50 at 13. The level of detail that Defendant demands is simply not required.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's motion to dismiss or, in the alternative, grant Plaintiffs leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

Dated: April 21, 2026

**GUTRIDE SAFIER LLP**

*/s/ Francisco J. Rolon*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Francisco J. Rolon (admitted *pro hac vice*)
francisco@gutridesafier.com
10 Glenlake Parkway, Suite 130
Atlanta, GA 30328
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*